The STATE of Ohio, Appellee,

v.

RICHARDSON, Appellant.*

[Cite as *State v. Richardson* (1995), 103 Ohio App.3d 21.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-940285.

Decided April 19, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 73 Ohio St.3d 1450, 654 N.E.2d 986.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Jennifer E. Day,* Assistant Prosecuting Attorney, for appellee.

*Deardorff & Haas* and *Timothy J. Deardorff,* for appellant.

---

PAINTER, Judge.

Defendant-appellant, Joshua Richardson, was indicted for the aggravated murder of Mark Jones pursuant to R.C. 2903.01(A) with a firearm specification pursuant to R.C. 2941.141. The case proceeded to a jury trial on March 14, 1994.

The state presented evidence that on November 26, 1993, at approximately 4:00 p.m., appellant exchanged words with Robert Payne on the sidewalk of E. Clifton Avenue very close to the corner of Lang Street. During the exchange, Payne said to appellant, "What are you going to do, get a gun?" and appellant replied, "No, it's already here." A fistfight ensued in which Payne struck appellant until appellant fell to the ground. Appellant got up and ran to a building a few steps away on the corner of E. Clifton and Lang where appellant's uncle, who had been present for the fight, helpfully handed him a gun.

Payne, who guessed appellant's intentions, ran west on E. Clifton and hid behind a car. Appellant came out from the building, stood on the corner and fired three shots towards Payne. One of the shots hit an automobile near Payne. Another struck Jones, an innocent bystander walking up the sidewalk on E. Clifton, causing his death. After the shooting, appellant ran to a car and drove away.

■ The jury found appellant guilty as charged. He appeals his conviction, presenting three assignments of error for review. In his first assignment of error, he states that the evidence was insufficient to support a conviction for aggravated murder. In his second assignment, he alleges that his conviction is against the manifest weight of the evidence. He argues these assignments together, contending that the state failed to prove that he acted with prior calculation and design. We find these assignments of error to be well taken.

■ R.C. 2903.01(A) states that "[n]o person shall purposely, and with prior calculation and design, cause the death of another." When the evidence reveals the presence of sufficient time and opportunity for the planning of a homicide and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph one of the syllabus. Prior calculation and design requires "some kind of studied analysis with its object being the means by which to kill." *State v. Jenkins* (1976), 48 Ohio App.2d 99, 101–102, 2 O.O.3d 73, 74–75, 355 N.E.2d 825, 828. While " '[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves,' " momentary deliberation is insufficient. *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 196, 616 N.E.2d 909, 918, quoting the Legislative Service Commission Comment to R.C. 2903.01.

■ The trier of fact must look to the context in which the killing occurred to determine whether there was prior calculation and design. Some of the factors to be considered are (1) whether the accused knew the victim prior to the crime, as opposed to a random meeting; (2) whether the relationship between the accused and the victim was strained; (3) whether the accused used thought and preparation to decide on the weapon or the site of the homicide; and (4) whether the act was drawn out over a period of time as opposed to an "almost instantaneous eruption of events." These factors must be considered together and viewed under the totality of circumstances. *Jenkins, supra,* 48 Ohio App.2d at 102–103, 2 O.O.3d at 74–75, 355 N.E.2d at 828; *State v. Lomax* (Sept. 7, 1994), Hamilton App. No. C–930399, unreported, 1994 WL 481729.

In *Jenkins, supra,* the defendant was standing in the street next to his parked car talking to some friends. The victim drove by and he and the defendant exchanged words. The victim stopped his car. The defendant walked to his own car and took a shotgun out of his trunk. He then walked to the front of his car and shot the victim. The court held that the state had failed to prove prior calculation and design. It stated:

"From the record it is clear that the defendant did not know the victim, that there had been no previous disagreement, and that the meeting was at random. There is no evidence to indicate any prior preparation to commit a homicide. The incident was not drawn out but was almost spontaneous. That the defendant went to his car, removed a shotgun, and fired a shot in the trunk of the car and two shots at the victim is not, standing alone, evidence of prior calculation and design. * * *" *Id.* at 103, 2 O.O.3d at 75–76, 355 N.E.2d at 829. See, also, *State v. Davis* (1982), 8 Ohio App.3d 205, 8 OBR 276, 456 N.E.2d 1256; *State v. Mulkey* (1994), 98 Ohio App.3d 773, 649 N.E.2d 897; *State v. Bonner* (Apr. 12, 1994), Franklin App. No. 93APA07–951, unreported, 1994 WL 119679.

The facts in the present case are more compelling than those in *Jenkins*. Appellant was involved in a fight. After being beaten by Payne, he ran to the building which Payne described as being "a couple of steps" away, retrieved the gun and started shooting. These events were not drawn out but occurred within seconds. When the shooting was over, appellant ran away. The state presented no evidence appellant engaged in any prior preparation to commit a murder. This case involves an "almost instantaneous eruption of events" as described in *Jenkins, supra,* not a "scheme designed to implement the calculated decision to kill" as required by *Robbins, supra.* That appellant knew a gun was available and subsequently retrieved it from his uncle is not, by itself, evidence of prior calculation and design.

■ If we were to hold that the conduct here constitutes "prior calculation and design," then the words would lose their meaning. Moreover, the legislative distinction between murder and aggravated murder would disappear. The legislature intended to impose a harsher penalty upon those who commit murder after reflection, deliberation, or as a result of a scheme or plan. The reflection need not be long, nor the plan elaborate, but it must exist. This court must follow that clear mandate of the law.

In sum, the evidence shows that appellant at most engaged in momentary deliberation, not that he developed a scheme designed to implement a calculated decision to kill. We hold that the state failed to present sufficient evidence to show that appellant acted with prior calculation and design. Therefore, we sustain appellant's first and second assignments of error and reverse his conviction for aggravated murder. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

■ Nevertheless, the state presented evidence which would convince the average mind beyond a reasonable doubt that appellant purposely sought to kill Payne, see R.C. 2901.22(A). Under the doctrine of transferred intent, the intent to kill Payne is transferred to Jones and appellant can be held criminally liable

for Jones's death as if he intended to kill Jones. *State v. Mullins* (1992), 76 Ohio App.3d 633, 636–637, 602 N.E.2d 769, 771–772; *State v. Clifton* (1972), 32 Ohio App.2d 284, 287, 61 O.O.2d 348, 349–350, 290 N.E.2d 921, 923. See, also, *State v. Solomon* (1981), 66 Ohio St.2d 214, 218, 20 O.O.3d 213, 215–216, 421 N.E.2d 139, 142. Therefore, there was sufficient evidence to convict appellant of murder pursuant to R.C. 2903.02. See *Jenks, supra.* Accordingly, we modify the trial court's judgment to a conviction for murder and remand the matter to the trial court for resentencing. See *State v. Reed* (1981), 65 Ohio St.2d 117, 125, 19 O.O.3d 311, 316–317, 418 N.E.2d 1359, 1365; *Jenkins, supra*, 48 Ohio App.2d at 103, 2 O.O.3d at 75–77, 355 N.E.2d at 831; *Mulkey, supra.*

In his third assignment of error, appellant states that the trial court erred in allowing the state to present evidence of and the prosecutor to comment upon the victim's good character. Appellant argues the evidence was so inflammatory that it rises to the level of plain error. We find this assignment of error is not well taken.

The state called as a witness the victim's brother, who testified that the victim graduated from high school, served in the United States Air Force, participated in the Persian Gulf War and had a daughter who lived in town. We see no purpose for this witness's testimony other than to provide background on the victim's character, which the prosecution may not present unless the defense opens the door. Therefore, the testimony was clearly inadmissible. Evid.R. 404(A); *State v. Swan* (Nov. 24, 1993), Hamilton App. No. C–920912, unreported, 1993 WL 538963; *State v. Oliver* (Oct. 17, 1985), Cuyahoga App. No. 49613, unreported, 1985 WL 8138.

However, appellant failed to object. The failure to object to an error in a criminal proceeding precludes the issue from being raised on appeal unless it rises to the level of plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 361, 444 N.E.2d 1332, 1333. An alleged error does not rise to the level of plain error unless but for the error, the outcome of the trial clearly would have been otherwise. *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920, certiorari denied (1990), 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235. Since Jones was not appellant's intended victim and several eyewitnesses described the circumstances of the fight and the shooting, we do not see how appellant was prejudiced by the admission of this irrelevant testimony. It is not so inflammatory that we can say the outcome of the trial clearly would have been otherwise or that its admission caused a "manifest miscarriage of justice." *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 581, 448 N.E.2d 452, 453. Further, appellant was represented by experienced and savvy trial counsel. The decision not to object to inadmissible but, given the facts of the case, not very prejudicial

testimony, may well have been deliberate trial strategy, which this court will not second-guess. See *Strickland v. Washington* (1984), 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694. Accordingly, appellant's third assignment of error is overruled.

The judgment of the trial court is affirmed in part as modified, and reversed in part, and this cause is remanded for sentencing in accordance with law.

*Judgment accordingly.*

BETTMAN, J., concurs.

HILDEBRANDT, J., dissents.

HILDEBRANDT, Judge, dissenting.

I respectfully dissent from the majority's disposition of appellant's first and second assignments of error. For the reasons that follow, I would affirm the judgment entered in accordance with the jury's verdict finding appellant guilty of aggravated murder.

In *State v. Allen* (May 25, 1994), Hamilton App. Nos. C–930159, C–930160, unreported, 1994 WL 201828, this court found sufficient evidence upon which the jury could find prior calculation and design. In that case, Retha Crutchfield, the victim, saw appellant, her son-in-law, waiting outside her apartment and went out to the curb to tell him to leave. Appellant did not go home. Instead, he moved his car farther down the street and then entered Mrs. Crutchfield's apartment with an iron weight-lifting bar tucked into his pants. According to appellant, he was initially admitted into Mrs. Crutchfield's apartment with her permission, although she made it clear that she did not want him to stay. After she told him to leave for the second or third time, appellant struck Mrs. Crutchfield in the head with the iron bar, and she fell unconscious to the floor. Mrs. Crutchfield remained in a coma until her death several weeks later.

In arriving at our decision, this court applied the tests of *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, and *State v. Jenkins* (1976), 48 Ohio App.2d 99, 2 O.O.3d 73, 355 N.E.2d 825, reasoning:

"In the instant case we are convinced, after considering the totality of the circumstances surrounding the homicide, that although it presents a very close question, there was sufficient evidence for the jury to find that appellant killed Retha Crutchfield with prior calculation and design. * * * Appellant's actions in entering the apartment 'armed' with the iron bar concealed in his pants after he had been told to leave the area by Mrs. Crutchfield, in remaining in the apartment for several hours after assaulting Mrs. Crutchfield, and in failing to summon medical assistance as his mother-in-law lay bleeding and unconscious on the floor present circumstances from which the jury could find 'a scheme

designed to implement a calculated decision to kill' within the meaning of R.C. 2903.01(A). * * *" *Allen, supra,* at 6–7.

In the present case, appellant had already acknowledged the presence of his firearm to Payne during the verbal part of their altercation. After being struck to the ground by Payne, appellant went into a nearby building where his uncle handed him the gun. Appellant emerged and fired three shots at the fleeing Payne, the second of which killed Mr. Jones. As the court observed in *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 196, 616 N.E.2d 909, 919, "[a]lthough defendant's actions took only 'a minute or two,' they clearly indicate his 'determination to follow through on a specific course of action,' which supports a finding that he previously 'adopted a plan to kill.'" (Citations omitted.)

Similarly, in this case appellant's actions took only a short time, but they indicate his intention to use a gun from the very beginning of the altercation, and his determination to follow through with that intention by going to his uncle to obtain the gun. In my opinion, these factors, considered under the totality of the circumstances, support a finding that appellant had adopted a plan to kill and constitute sufficient evidence of prior calculation and design.

With respect to the second assignment of error concerning the manifest weight of the evidence, the jury was charged by the trial court on the offenses of aggravated murder, murder and manslaughter. I believe that the jury did not lose its way in resolving the conflicts in the evidence or in concluding that appellant committed murder with prior calculation and design. See *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Accordingly, I would affirm the trial court's judgment.