The STATE of Ohio, Appellee,

v.

HIRSCH, Appellant.

[Cite as *State v. Hirsch* (1998), 129 Ohio App.3d 294.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970315.

Decided Aug. 7, 1998.

296

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *William E. Breyer*, Assistant Prosecuting Attorney, for appellee.

*Bryan R. Perkins*, for appellant.

---

DOAN, Judge.

Following a jury trial, defendant-appellant, Jonathan Hirsch, was convicted of the aggravated murder of his mother-in-law, Caroline Jones, pursuant to R.C. 2903.01(A). He now appeals that conviction, asserting twelve assignments of error. While we find some errors in the proceedings below, we ultimately hold that given the quantum of evidence against Hirsch, any errors were harmless or do not amount to plain error. Consequently, we affirm his conviction.

On October 27, 1994, at approximately 7:00 a.m., Donald Blum left his apartment and found his neighbor, Caroline Jones, lying near the apartment building's detached garage covered with blood. He immediately summoned her son, Jason Jones, who thought at first that his mother had fallen. But, when they tried to revive her, they discovered that she had been viciously attacked and was already dead, causing Jason to become hysterical.

Police officers arrived at the scene a short time later. They discovered large quantities of blood and took blood samples from various places in and around the garage. Later analysis showed that all the blood samples came from the victim, who had bled profusely. Blum and Jason Jones were both excluded as sources for the blood. Police officers also discovered a baseball hat covered in blood at the scene. The officers retrieved several hairs from the hat, as well as from the

victim's coat. Later analysis showed that one hair on the hat was an animal hair. The remaining hairs were human but did not correspond to hair samples taken from Blum, Jason Jones, or the victim.

The police ran out of leads and the case remained unsolved for approximately a year and a half. Subsequently, they received a call from the Orlando, Florida, police, who had been contacted by a private investigator from Florida inquiring about a similar murder. This contact led Cincinnati police detectives to interview Stephen Cantwell and Hans Cone, both former business partners of Hirsch. Both Cantwell and Cone, who did not know each other, described how Hirsch had bragged about murdering his mother-in-law. Though their stories varied slightly, they both knew details that only the killer would know, as the police had released little information about the case to the media.

Hirsch had married Janel, Caroline Jones's daughter and Jason Jones's twin sister, in 1993. She was in the navy and lived during the week in Jacksonville, Florida, at the base where she was stationed. On the weekends, she commuted to the home she shared with Hirsch in Geneva, Florida, approximately two hours away. At the time of the marriage, Caroline Jones had a life insurance policy listing Janel as the first beneficiary and Jason as the secondary beneficiary. Caroline Jones developed a dislike of Hirsch, and she subsequently changed the policy, naming Jason as her sole beneficiary. Jason testified that he did not know of this change until after his mother's death when her estate was opened. Upon learning he was the sole beneficiary, he told Janel that he would use some of the money to put her through school, but that he would not let Hirsch have access to it. Subsequently, he received a phone call from Hirsch that he perceived as threatening. Janel testified at trial that her mother had told her of the change of beneficiary, but she had earlier told police that she did not know about it until after her mother's death.

According to Cone and Cantwell, Hirsch drove to Ohio in a car belonging to a friend, telling Cone that he would be on vacation and telling Janel that he would be in south Florida on business. He asked Cone to go to his house on the night before the murder and feed his dogs. Hirsch left Cone a note asking Cone to make two long-distance phone calls from Hirsch's home. Cone made these calls, which later appeared on Hirsch's phone bill, at approximately 10:30 p.m. that evening.

Hirsch arrived in Cincinnati in the early morning hours of October 27, 1994, and hid in the yard of a residence behind Caroline Jones's apartment building. He watched through the windows of her apartment as she got ready for work. While he was waiting, a dog in the yard in which he was concealed began to bark. Afraid that the barking would draw attention, Hirsch petted the dog and gave it some candy to quiet it down.

Caroline Jones left her apartment at approximately 6:35 a.m. and went to the detached garage where her car was parked. Hirsch then confronted her with a knife. Hirsch fancied himself a trained killer, due to his military training. He reasoned that a trained killer would kill someone cleanly, so he decided to make the killing messy, as if an amateur had done it. Consequently, he inflicted numerous brutal injuries on the victim, including slashing her jugular vein, which was the injury that ultimately resulted in her death.

During the struggle, Jones gouged Hirsch's arm with her keys. Cone reported seeing Hirsch's arm bandaged shortly after the killing, and Cantwell observed scars on Hirsch's arm sometime later. After the attack, Hirsch fled and lost his baseball hat. He stated that did not feel that leaving his hat at the scene was a problem because he had a crew cut and therefore he would not leave any hairs for hair samples. According to Cone, Hirsch said he immediately left the area. According to Cantwell, Hirsch stated that he hid and watched while Blum and Jason Jones tried to revive the victim. He saw Jason become hysterical, which he liked. Then he left for Florida.

Hirsch also told Cantwell that he regretted telling Cone about the murder. Hirsch and Cone had been involved in a fraudulent check scheme. Hirsch felt that because of this fraudulent activity, Cone was at risk of being arrested and that he might inform on Hirsch to make things easier for himself. Consequently, Hirsch formulated a plan to kill Cone and to dump his body in a lime pit on Hirsch's property. According to that plan, Hirsch and an accomplice surprised Cone, beat him, shot him with stun guns, and finally hit him in the head with a carbon-dioxide canister. Someone witnessed the assault and called the police. An officer arrived to find Cone barely conscious, stripped to his underwear and covered in blood. Hirsch was later convicted of attempted murder in Florida. He received probation as part of a deal in which he was to pay restitution for Cone's medical bills that resulted from the extensive injuries Hirsch had inflicted on him.

After hearing Hirsch brag about the murder of his mother-in-law and the attempted murder of Cone, Cantwell began to fear for his own safety. Consequently, he hired a private detective to see if he could confirm Hirsch's story about the murder. He began to worry even more when Hirsch suggested that they take out insurance policies naming each other as the beneficiary. After the private investigator confirmed Hirsch's story, Cantwell became so alarmed that he sold his share of the business to Hirsch for a pittance, abandoned everything, and moved his family to Alaska.

After speaking with Cantwell and Cone, Cincinnati police officers arrested Hirsch in Florida. They also interviewed Janel Hirsch at length. They took hair

and blood samples from Hirsch. Lab tests ultimately showed that one hair from the victim's coat was consistent with Hirsch's hair.

Hirsch presented an alibi defense at trial, using primarily his wife's testimony and phone records to establish that he was in Florida at the time of the murder. Janel testified that Jason called her at the navy base in Jacksonville, Florida, the morning of October 27, 1994, to inform her about their mother's murder. She indicated that Hirsch called her at the base that afternoon, but she could not identify definitively the location from which he called. Telephone records did not show any calls made at that time to Jacksonville from Hirsch's home phone or on his phone card.

Janel's superiors arranged emergency transport on a military plane, and she arrived in Cincinnati at approximately 6:00 p.m. that same day. Jason met her at the airport and took her back to her mother's apartment. At 8:00 p.m., Janel called her home in Geneva, Florida, to speak to Hirsch. She claimed to have reached him, but the telephone billing statement showed that the call was less than a minute in length, supporting the inference that she reached the answering machine, which previous testimony had established was on at all times. Further, Janel originally told police that her husband was in south Florida on October 27 and that she did not know when she had first spoken with him after learning of her mother's murder. She also did not tell them that she had talked to him either that afternoon or that evening as she claimed at trial.

Additionally, the Hirsches' phone bill showed that at 12:03 and 12:08 a.m. on October 28, 1994, the night following the murder, Hirsch used his phone card to call two families in Cincinnati. Both of these families had the surname of Gray. Caroline Jones's maiden name was Gray, and her phone number was unlisted at the time of her death. These calls were made from a public telephone very close to Janel's apartment in Jacksonville, supporting the inference that Hirsch immediately headed to Jacksonville after the murder to contact Janel and use her as an alibi. But he did not know that the military had put her on a plane so quickly, and he panicked and attempted to call her in Cincinnati.

At approximately 3:44 a.m. that same night, a deputy from the Flagler County, Florida sheriff's office ran a routine query on the license plate of the car Hirsch was driving. Though the query came back negative, records remained showing that it had been made. Flagler County is on the route from Jacksonville to Orlando. In fact, no one saw Hirsch until 6:00 a.m. that morning, when he arrived in Orlando where Cone was working. Cone said he appeared to be "wired," and that he acknowledged that he had been on a long drive.

After hearing the evidence, the jury found Hirsch guilty as charged. The trial court properly sentenced Hirsch, and he filed a timely appeal. Hirsch presents

twelve assignments of error for review, which we will address grouped by subject matter.

## I. "OTHER ACTS" EVIDENCE

In his first assignment of error, Hirsch argues that the trial court erred in allowing the state to introduce evidence of a prior conviction and various other acts he had committed. He argues that the other acts were independent of the offense with which he was charged and that the state used them solely to attack his character. In his second assignment of error, Hirsch claims that the trial court erred by not granting his motion *in limine*. He contends that the trial court should have issued an order prohibiting the state from any mention of his prior criminal record until he became subject to cross-examination. While we find that some of Hirsch's arguments have merit, we are not persuaded that reversal on this basis is warranted, and we conclude, ultimately, that Hirsch's first and second assignments of error are not well taken.

■■■ Generally, the prosecution in a criminal trial may not present evidence that a defendant has committed other crimes or acts independent of the crime for which the defendant is being tried for the purpose of establishing that the defendant acted in conformity with his or her bad character. Evid.R. 404(B); *State v. Davis* (1989), 64 Ohio App.3d 334, 339, 581 N.E.2d 604, 607. An exception to the general rule is set forth in Evid.R. 404(B), which provides that evidence of other acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Shedrick* (1991), 61 Ohio St.3d 331, 337, 574 N.E.2d 1065, 1069–1070; *State v. Stewart* (1996), 111 Ohio App.3d 525, 531, 676 N.E.2d 912, 916. See, also, R.C. 2945.59. Because Evid.R. 404(B) codifies an exception to the general rule, it must be strictly construed against admissibility. *State v. Coleman* (1989), 45 Ohio St.3d 298, 299, 544 N.E.2d 622, 625, certiorari denied (1990), 493 U.S. 1051, 110 S.Ct. 855, 107 L.Ed.2d 849; *State v. Goines* (1996), 111 Ohio App.3d 840, 844, 677 N.E.2d 412, 415. Nevertheless, the other acts need not be similar to the crime at issue to be admissible. If the other act does in fact tend to show by substantial proof any of the things enumerated in Evid.R. 404(B), evidence of the other act is admissible. *Coleman, supra*, 45 Ohio St.3d at 299–300, 544 N.E.2d at 625; *State v. Broom* (1988), 40 Ohio St.3d 277, 282, 533 N.E.2d 682, 690, certiorari denied (1989), 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 653.

■■■ Hirsch contends that the state improperly presented evidence of his prior conviction for the attempted murder of Cone. He claims that the state repeatedly bombarded the jury with the details of that crime to purposely paint him as a violent and dangerous individual. Evidence of intimidation of witnesses

or attempts at suppression of adverse evidence reflects a consciousness of guilt and is not wholly independent of the charged offenses. These acts are admissions by conduct and are admissible to prove identity because they directly tie the defendant to the criminal act. *State v. Richey* (1992), 64 Ohio St.3d 353, 357, 595 N.E.2d 915, 921, certiorari denied (1993), 507 U.S. 989, 113 S.Ct. 1592, 123 L.Ed.2d 157; *State v. Lowe* (1994), 69 Ohio St.3d 527, 530–531, 634 N.E.2d 616, 619; *State v. Soke* (1995), 105 Ohio App.3d 226, 250, 663 N.E.2d 986, 1001–1002. Consequently, evidence that Hirsch attempted to kill Cone to prevent Cone from informing authorities about Hirsch's confession is relevant to prove Hirsch's identity as the murderer of Caroline Jones, regardless of whether the other conviction was similar to the charged offense. Consequently, we hold that the admission of evidence regarding Hirsch's prior conviction for attempted murder did not violate Evid.R. 404(B).

Nevertheless, the question remains how much detail about the prior conviction the state needed to make its point to the jury. As with all evidence, other-acts evidence is subject to the relevancy and fairness requirements of Evid.R. 403(A) and must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Soke, supra,* 105 Ohio App.3d at 249, 663 N.E.2d at 1001; *State v. Matthews* (1984), 14 Ohio App.3d 440, 442, 14 OBR 559, 561–562, 471 N.E.2d 849, 851–852. The decision whether to admit or exclude relevant evidence under Evid.R. 403(A) rests within the discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus; *Soke, supra,* 105 Ohio App.3d at 249, 663 N.E.2d at 1001. An appellate court will not disturb the trial court's decision to admit or exclude evidence absent an abuse of discretion and a showing that the accused has suffered material prejudice. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 336, 483 N.E.2d 1157, 1164, certiorari denied (1986), 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808.

The state not only presented a copy of the judgment of conviction into evidence, but it also elicited great detail from Cone in its case-in-chief about the violent injuries inflicted upon him by Hirsch. Some evidence of the details may have been relevant to show that the leniency of the Florida sentence was not indicative of a less serious crime. Nevertheless, the prosecutor went on at length about the details of the conviction. Evidence regarding other acts may be highly prejudicial. The admissibility of other acts is limited due to the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has the propensity to commit criminal acts, is a bad person, or deserves punishment, regardless of whether he or she committed the crime charged in the indictment. *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, 668. Our review of the record shows that the state placed undue

emphasis on the details of Hirsch's prior conviction as part of a clear attempt to paint Hirsch as the sort of sociopathic, violent individual who would commit the brutal murder of his mother-in-law for life insurance proceeds. This evidence carried a high potential for inflaming the jury, and the state's reliance on it, particularly in its case-in-chief, was ill-advised. See *State v. Sutherland* (1994) 92 Ohio App.3d 840, 637 N.E.2d 366; *State v. Roberts* (Mar. 6, 1996), Hamilton App. No. C–950277, unreported, 1996 WL 96897. Ironically, some evidence of the details might have been admissible in rebuttal because Janel Hirsch testified that the incident leading to the conviction had been a fight and not a calculated murder attempt.

What is particularly troublesome about the state's emphasis on the details of the prior conviction is that it was so unnecessary. The state presented overwhelming evidence against Hirsch, including a thorough rebuttal of his alibi defense. That the evidence was so overwhelming weighs heavily in the balancing test to determine if the other-acts evidence was admissible under Evid.R. 403(A). The quantum of otherwise proper evidence against Hirsch minimized the danger of any unfair prejudice from any improper evidence. Further, while we believe that the state crossed a line by relying too heavily on the other-acts evidence, we cannot definitively say where that line would fall. Though we might have ruled differently, we cannot conclude that the trial court's decision to allow into evidence all of the details of Hirsch's prior conviction was so arbitrary, unreasonable, or unconscionable as to constitute an abuse of discretion. See *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148.

 Hirsch further argues that the trial court improperly allowed the state to introduce additional other-acts evidence that served to further taint the proceedings. He argues that the state should not have been permitted to introduce, over objection, evidence that he and Cone had been involved in fraudulent check schemes. This evidence was part of the background of the crime and was not wholly independent of the crime charged: it showed why Hirsch feared that Cone would tell the police about his murder confession. Further, it did not show that Hirsch had a propensity to commit *violent* acts, the inference of which he complains, and its effect on the overall trial was minimal. Consequently, we conclude that the trial court did not abuse its discretion in admitting it into evidence. See *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920, certiorari denied (1990), 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235; *Lowe, supra,* 69 Ohio St.3d at 530–531, 634 N.E.2d at 619; *Soke, supra,* 105 Ohio App.3d at 250, 663 N.E.2d at 1001–1002.

 More troublesome is Hirsch's contention that the trial court admitted evidence that Hirsch had a violent military background, that he collected and

carried weapons, that he had behaved violently, that he lived in a desolate "compound," and that he had the nicknames "Rambo" and "Psycho Johnny." Much of this evidence was other-acts evidence presented solely for the purpose of painting Hirsch as a violent individual, and it was clearly inadmissible under Evid.R. 404(B). See *State v. Gillard* (1988), 40 Ohio St.3d 226, 230, 533 N.E.2d 272, 277, certiorari denied (1989), 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608; *State v. Davis* (1989), 64 Ohio App.3d 334, 339–340, 581 N.E.2d 604, 607–608; *State v. Jones* (Dec. 29, 1995), Hamilton App. No. C–950005, unreported, 1995 WL 763604. Some of it was not technically other-acts evidence, but it had little relevance other than to portray Hirsch as a violent individual. See *Soke, supra*, 105 Ohio App.3d at 249, 663 N.E.2d at 1001; *Jones, supra*. Consequently, the trial court erred in admitting this evidence. Nevertheless, Hirsch failed to object, which precludes him from raising the issue on appeal unless it rises to plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 360–361, 444 N.E.2d 1332, 1333. Given the overwhelming evidence against Hirsch, we cannot conclude that, but for the error, the result of the trial clearly would have been otherwise. *Wickline, supra*, 50 Ohio St.3d at 119–120, 552 N.E.2d at 919–920. Therefore, we cannot hold that the trial court committed plain error in admitting this evidence, and we overrule Hirsch's first and second assignments of error.

## II. PROSECUTORIAL MISCONDUCT

In his third assignment of error, Hirsch asserts that the trial court erred by allowing the state to deliver a prejudicial opening statement. In his fourth assignment of error, Hirsch asserts that the trial court erred in allowing the state to deliver a prejudicial closing argument. He argues that, in both instances, the prosecutor made improper arguments regarding his character and improper reference to his prior criminal conviction and other bad acts. We find these assignments of error are not well taken.

The test for prosecutorial misconduct is (1) whether the remarks were improper and, (2) if so, whether the remarks prejudicially affected the accused's substantial rights. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596. Prosecutors are normally entitled to wide latitude in their remarks. *State v. Mason* (1998), 82 Ohio St.3d 144, 162, 694 N.E.2d 932, 952; *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912, paragraph two of the syllabus. Nevertheless, prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence. *Lott, supra*, 51 Ohio St.3d at 166, 555 N.E.2d at 300. The conduct of the prosecuting attorney during the trial cannot be

grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203, 206; *Roberts, supra.* " 'The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *Lott, supra,* 51 Ohio St.3d at 166, 555 N.E.2d at 301, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87–88.

■ We have reviewed the prosecutor's opening and closing arguments, and we find cause for concern. First, the state repeatedly emphasized Hirsch's alleged nicknames, "Rambo" and "Psycho Johnny," which was clearly improper. *Gillard, supra,* 40 Ohio St.3d at 230, 533 N.E.2d at 277. As previously discussed, the state also placed too much emphasis on the details of Hirsch's plan to murder Cone and on his other alleged bad acts. Further, these were not isolated incidents in an otherwise properly tried case. See *Keenan, supra,* 66 Ohio St.3d at 410, 613 N.E.2d at 209. These arguments clearly comported with the state's strategy of painting Hirsch as the sort of violent individual who would commit aggravated murder. We highly disapprove of these tactics, and if this were a closer case, we would find reversal to be proper.

Nevertheless, the evidence in this case was overwhelming, from Hirsch's detailed confessions to Cone and Cantwell, to his attempt to silence Cantwell, to his attempts to establish a false alibi. We hold that even absent the prosecutor's misconduct, the jury would have in any event found Hirsch guilty. Further, the trial court did instruct the jury that counsel's arguments were not evidence. Finally, Hirsch failed to object to most of the prosecutor's comments. Under the circumstances, we simply cannot conclude that the prosecutor's comments rose to the level of prejudicial error. See *Mason, supra,* 82 Ohio St.3d at 162, 694 N.E.2d at 951; *Keenan, supra,* 66 Ohio St.3d at 410–411, 613 N.E.2d at 210; *State v. Benson* (1992), 81 Ohio App.3d 697, 702–705, 612 N.E.2d 337, 340–342. Accordingly, we overrule Hirsch's third and fourth assignments of error.

■ In his fifth assignment of error, Hirsch argues that the trial court erred by permitting repeated instances of prosecutorial misconduct relating to the other-acts and character evidence. It is basically a claim of cumulative error, supported by arguments made in his previous assignments of error. Multiple errors that are separately harmless may, when considered together, violate a person's right to a fair trial in the appropriate situation. *State v. Goff* (1998), 82 Ohio St.3d 123, 140, 694 N.E.2d 916, 929. See, also, *Jones, supra.* Though we find much that concerns us in this case, we are not persuaded that the errors were so egregious as to deny Hirsch a fair trial, either collectively or individually, given the overwhelming evidence against him. Accordingly, we overrule Hirsch's fifth assignment of error.

In his ninth assignment of error, Hirsch states that the trial court erred in allowing the prosecuting attorney to make improper comments about his alibi. He argues that he was denied a fair trial when the prosecutor implied that he had fabricated his alibi even though he fully complied with Crim.R. 12.1. We find this assignment of error is not well taken.

Crim. 12.1 requires the defendant who wishes to raise an alibi defense to file a notice of alibi not less then seven days before trial, a rule with which Hirsch complied. The prosecuting attorney may not adduce evidence of the date that the defendant filed the notice of alibi because the failure to file it promptly is not probative of guilt and because it is tantamount to adducing evidence about the defendant's silence. *State v. Tolbert* (1990), 70 Ohio App.3d 372, 380–381, 591 N.E.2d 325, 330–331; *State v. Sims* (1982), 3 Ohio App.3d 331, 331–334, 3 OBR 385, 385–389, 445 N.E.2d 245, 245–249. Despite the state's claim to the contrary in its brief, the record clearly shows that the state adduced evidence and argued about the date that Hirsch filed his notice of alibi. This conduct was patently improper and the trial court erred in permitting it. Nevertheless, Hirsch failed to object, and we cannot conclude that the error was so egregious that it deprived Hirsch of a fair trial and rose to the level of plain error. Other comments by the prosecutor about how Hirsch's alibi witnesses did not talk to the police and did not come forward until trial were fair comments on the evidence. Therefore, they were not improper. See *Goff, supra,* 82 Ohio St.3d at 135, 694 N.E.2d at 926. Accordingly, we overrule Hirsch's ninth assignment of error.

## III. OTHER EVIDENTIARY ISSUES

In his sixth assignment of error, Hirsch contends that the trial court erred by allowing the state to introduce evidence of the victim's character. The state elicited testimony from Blum and from Jason Jones that Caroline Jones got along with everyone, that she had no enemies, and that no one had a reason to kill her. The prosecutor also commented briefly in closing argument that she was quiet and had no enemies. Pursuant to Evid.R. 404(A), evidence of the character of the victim as a quiet and peaceable person is inadmissible except to rebut a defense claim that the victim was the first aggressor. *State v. Richardson* (1995), 103 Ohio App.3d 21, 26, 658 N.E.2d 321, 324; *State v. Schmidt* (1979), 65 Ohio App.2d 239, 242–243, 19 O.O.3d 201, 203–204, 417 N.E.2d 1264, 1267–1268. There was no such claim in this case, and we therefore conclude that the trial court erred in admitting evidence regarding the victim's character. Nevertheless, Hirsch did not object to this testimony. In the context of the overall trial, the references to the victim's character were brief and relatively innocuous, and we cannot say that the error rose to the level of plain error. See *State v. Smith* (1997), 80 Ohio St.3d 89, 106–107, 684 N.E.2d 668, 686, certiorari denied (1998), —— U.S. ——, 118 S.Ct. 1811, 140 L.Ed.2d 949; *Lott, supra,* 51 Ohio St.3d

at 169, 555 N.E.2d at 303. Accordingly, we overrule Hirsch's sixth assignment of error.

In his seventh assignment of error, Hirsch states that the trial court erred by allowing an agent from the Federal Bureau of Investigation to testify about the content of a "VICAP" report and by admitting the report into evidence. He argues that the report constituted impermissible hearsay and that it was never properly authenticated. We find this assignment of error is not well taken.

Special Agent John Holland testified that VICAP is a department within the F.B.I. that does profiling to give local police an idea of what type of suspect to look for based on certain characteristics. He also testified that VICAP keeps a data bank of information about various crimes within the ordinary course of business. He checked the VICAP system and received a report that on October 28, 1994, at approximately 3:34 a.m., a member of the Flagler County, Florida sheriff's department made a computer query about the license plate of the car Hirsch allegedly drove to Cincinnati and back. This testimony permitted the state to argue that Hirsch was en route from Jacksonville to his home in Geneva, Florida, consistent with the state's time line of events.

Evid.R. 803(6) provides an exception to the general prohibition against the introduction of hearsay evidence for records of regularly conducted activity. The proponent of evidence allegedly falling under this exception must lay a proper foundation for its admission through the testimony of the records custodian or some other qualified individual. The testifying witness must possess a working knowledge of the specific record-keeping system that produced the document. *State v. Davis* (1991), 62 Ohio St.3d 326, 342, 581 N.E.2d 1362, 1376–1377, certiorari denied (1992), 506 U.S. 803, 113 S.Ct. 302, 121 L.Ed.2d 6; *State v. Comstock* (Aug. 29, 1997), Ashtabula App. No. 96–A–0058, unreported, 1997 WL 531304. " 'While the witness need not have personal knowledge of the creation of the particular record in question, and need not have been in the employ of the company at the time the record was made, he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business.' " (Citation omitted.) *Davis, supra*, 62 Ohio St.3d at 342, 581 N.E.2d at 1377, quoting *Dell Publishing Co., Inc. v. Whedon* (S.D.N.Y.1984), 577 F.Supp. 1459, 1464, fn. 5.

While Holland testified that the VICAP report was kept in the ordinary course of business, the record contains no evidence showing that he had any basis for that statement. The evidence did not show that he had personal knowledge of the record-keeping system itself or that he could vouch for the trustworthiness of the report. Because the state failed to lay a proper foundation for its admission, the trial court erred in admitting the report itself and testimony about its

contents into evidence. *Davis, supra,* 62 Ohio St.3d at 343, 581 N.E.2d at 1377; *Comstock, supra; State v. Hoskins* (Feb. 3, 1997), Butler App. No. CA96–04–081, unreported, 1997 WL 44376; see, also, *State v. Vogelsong* (1992), 82 Ohio App.3d 354, 612 N.E.2d 462.

■ Hirsch did not object when Holland testified, but he did object to the admission of the report itself into evidence. Nevertheless, this evidence went toward proving only a minor part of the state's overall case, and the evidence against Hirsch was otherwise overwhelming. Consequently, we hold that the error was harmless beyond a reasonable doubt, see *State v. Williams* (1983), 6 Ohio St.3d 281, 290, 6 OBR 345, 352–353, 452 N.E.2d 1323, 1332; certiorari denied (1983), 464 U.S. 1020, 104 S.Ct. 554, 78 L.Ed.2d 727; *Stewart, supra,* 111 Ohio App.3d at 532, 676 N.E.2d at 917; *Sims, supra,* 3 Ohio App.3d at 334, 3 OBR at 388–389, 445 N.E.2d at 249, and we overrule Hirsch's seventh assignment of error.

■ In his eleventh assignment of error, Hirsch states that the trial court erred by refusing to admit into evidence his medical records from the United States Navy. He argues that the documents were certified to be true copies of the originals and that they contained exculpatory evidence showing that the scars on his arms had another cause than the victim's keys. We find this assignment of error is not well taken.

Hirsch presented no testimony authenticating the documents. He argues that they were self-authenticating under Evid.R. 902. The theory of this rule is that certain documents are, by their very nature, self-evidently genuine on their face. With these documents, the risk of forgery is slight and practical considerations dictate that courts dispense with the necessity for foundational evidence. *State v. Morehart* (Oct. 31, 1997), Wood App. No. WD–97–047, unreported, 1997 WL 679637; Weissenberger, Ohio Evidence (1998) 596, Section 902.2.

■ Even if we assume for the sake of argument that these records can be called public documents, we find no provision in Evid.R. 902 under which these records would fall. Though they contain a certification from a purported navy official stating that "the attached health record of Jonathan Hirsch * * * is a true copy of the original," they do not bear an official seal. Consequently, they are not admissible under Evid.R. 902(1) as a domestic document under seal. See *State v. Clites* (1991), 73 Ohio App.3d 36, 596 N.E.2d 550; *Morehart, supra.* Further, they contain no certification under seal that the signer had official capacity and that the signature is genuine. Consequently, they are not admissible under Evid.R. 902(2), the provision for domestic public documents not under seal. Finally, they are not admissible under Evid.R. 902(4) as certified copies of

public records, as this provision does not apply to unrecorded documents. Staff Note to Evid.R. 902(4); Weissenberger at 602, Section 902.45.

In sum, nothing in the record demonstrates that these documents were genuine on their face. Because they were not self-authenticating under Evid.R. 902, Hirsch needed to present extrinsic evidence demonstrating that the records were what he claimed them to be. See Evid.R. 901; *Seringetti Constr. Co. v. Cincinnati* (1988) 51 Ohio App.3d 1, 9, 553 N.E.2d 1371, 1379. Since he did not, the trial court did not abuse its discretion in failing to admit the records, and we overrule his eleventh assignment of error.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his eighth assignment of error, Hirsch states that he was denied effective assistance of counsel. He argues that his trial counsel failed to make appropriate objections and to take necessary steps to protect his rights. We find that this assignment of error is not well taken.

A properly licensed attorney is presumed competent, and the defendant bears the burden of showing ineffective assistance of counsel. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476, 479, certiorari denied (1988), 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550. To sustain a claim of ineffective assistance of counsel, a defendant must demonstrate that the counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693.

To establish that counsel's performance was deficient, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687–688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693–694. Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–695. A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523, 540, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177, 103 L.Ed.2d 239.

To establish prejudice, a defendant mush show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697–698. Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the proceeding was unreliable or fundamentally unfair because of counsel's perfor-

mance. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 369–370, 113 S.Ct. 838, 842–843, 122 L.Ed.2d 180, 188–190; *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, 977.

Hirsch's sole claim of ineffective assistance of counsel is counsel's failure to object to various incidents of alleged misconduct by the prosecution. Nevertheless, counsel zealously fought the introduction of the most damaging piece of other-acts evidence, Hirsch's prior conviction for the attempted murder of Cone. Further, counsel thoroughly cross-examined the state's witnesses, vigorously pursued Hirsch's alibi defense, and used expert testimony to rebut the state's scientific evidence. While we might have found objectionable some of the matters Hirsch describes had the case been tried before us, we cannot say that counsel's failure to object in this case did not fall in the realm of acceptable trial strategy. Consequently, we cannot conclude that counsel's performance fell below an objective standard of reasonableness.

Further, we cannot say that any errors by counsel changed the results of the proceeding or that they rendered it fundamentally unfair. Given the overwhelming evidence against Hirsch, we are not persuaded that the jury would have come to any other conclusion but that Hirsch was guilty beyond a reasonable doubt. Accordingly, we overrule Hirsch's eighth assignment.

## V. SPEEDY TRIAL

In his tenth assignment of error, Hirsch states that the trial court erred in overruling his motion to dismiss for denial of his right to a speedy trial. He argues that he was not tried within the periods specified by Ohio's speedy-trial statutes and the Uniform Criminal Extradition Act. We find that this assignment of error is not well taken.

R.C. 2945.71(C)(2) provides that a person charged with a felony shall be bought to trial within two hundred seventy days after arrest. For computing time, each day during which the accused is held in jail in lieu of bail shall be counted as three days. R.C. 2945.71(E). Extensions of the time period within which the accused must be brought to trial are permissible only for the reasons expressed in R.C. 2945.72. *State v. Saffell* (1988), 35 Ohio St.3d 90, 91, 518 N.E.2d 934, 935; *State v. Arrizola* (1992), 79 Ohio App.3d 72, 74–75, 606 N.E.2d 1020, 1021.

Since the triple-count provision applies in this case, the state had ninety days to bring Hirsch to trial. *State v. Singer* (1977), 50 Ohio St.2d 103, 105, 4 O.O.3d 237, 238, 362 N.E.2d 1216, 1218; *State v. Greenwood* (July 18, 1994), Clinton App. No. CA93–11–034, unreported, 1994 WL 372222. Because Hirsch was not tried within ninety days of his arrest, he established a prima facie case of violation of the speedy-trial statutes. The state then bore the burden to

demonstrate that actions or events chargeable to the defendant tolled enough time so that the defendant was tried within the speedy-trial period. *State v. Geraldo* (1983), 13 Ohio App.3d 27, 28, 13 OBR 29, 30–31, 468 N.E.2d 328, 330–331.

Hirsch was arrested in Florida on March 1, 1996. Because he fought extradition, Hamilton County did not receive custody of him until May 31, 1996. Consequently, the ninety-day period did not begin to run until that date. R.C. 2945.72(A); *State v. Adkins* (1982), 4 Ohio App.3d 231, 232, 4 OBR 422, 422–423, 447 N.E.2d 1314, 1316; *State v. Bass* (Jan. 17, 1997), Stark App. No. 1995CA00347, unreported, 1997 WL 116971.

The time ran from May 31, 1996, until June 26, 1996, with a total of twenty-six days chargeable to the state elapsing. On that date, the court journalized an entry stating that it was continuing the case at Hirsch's request until January 6, 1997. It also stated that "defendant waives time." Despite Hirsch's claim to the contrary, nothing in the record shows that this waiver was not knowingly and voluntarily made. Compare *State v. Taylor* (July 15, 1991), Butler App. No. C90–08–177, unreported, 1991 WL 129795. Consequently, the time within which Hirsch had to be brought to trial was tolled until January 6, 1997. See *State v. O'Brien* (1987), 34 Ohio St.3d 7, 516 N.E.2d 218; *State v. Adams* (1989), 43 Ohio St.3d 67, 538 N.E.2d 1025.

On January 6, the state sought a continuance because Cone, one of its major trial witnesses, had just been incarcerated in Florida and was unavailable to testify at trial. The trial court continued the case until February 24, 1997. Hirsch objected and moved to dismiss on the grounds that his right to a speedy trial had been violated. The trial court denied the motion. On February 21, the state received another continuance because of its continued inability to obtain Cone's presence at trial. The case eventually proceeded to trial on March 17, 1997.

We first note that the state argues that because Hirsch did not raise the matter after January 6, 1997, this court need not make any further inquiry. We disagree. The state has a mandatory duty to comply with the speedy-trial statutes. *Singer, supra*, 50 Ohio St.2d at 105–106, 4 O.O.3d at 238–239, 362 N.E.2d at 1218. The Ohio Supreme Court has held that the accused's failure to object to a trial date outside the ninety-day time limit does not amount to acquiescence in that date and does not extend the time within which the accused must be brought to trial. *Id.* at syllabus; *State v. Cutcher* (1978), 56 Ohio St.2d 383, 10 O.O.3d 502, 384 N.E.2d 275, syllabus.

■ Pursuant to R.C. 2945.72(H), the time in which the accused must be brought to trial may be extended by "the period of any reasonable continuance other than upon the accused's own motion." In granting a continuance under this section, the court must journalize an entry stating the reasons therefor before the expiration of the time limit within which the defendant must be brought to trial. *State v. King* (1994), 70 Ohio St.3d 158, 162, 637 N.E.2d 903, 906; *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571, syllabus.

In this case, the trial court journalized entries on January 6, 1997, and February 21, 1997, both before the expiration of the ninety-day period, stating that it was continuing the case because a necessary state's witness was unavailable. The Ohio Supreme Court, as well as this court, has stated that continuances necessitated by the unavailability of a witness are reasonable. *Saffell, supra,* 35 Ohio St.3d at 91–92, 518 N.E.2d at 935; *State v. Engel* (Sept. 29, 1995), Hamilton App. Nos. C–950109, C–950110 and C–950111, unreported, 1995 WL 577421. Further, the record contains some indication that Hirsch and his agents were responsible for Cone's incarceration immediately before trial was scheduled. The speedy-trial period would necessarily be tolled during the period of any delay caused by the accused's improper act. R.C. 2945.72(D). We conclude, therefore, that the speedy-trial period was properly tolled, and, therefore, Hirsch was tried within the ninety-day limit as required by R.C. 2945.71.

■ Hirsch further argues that the state violated R.C. 2963.01 *et seq.,* Ohio's codification of the Uniform Criminal Extradition Act. He claims that pursuant to R.C. 2963.13 and 2963.15, a state has ninety days to process an extradition request after arresting an accused on a fugitive warrant. Because Hirsch was arrested in Florida on March 1, 1996, and he was not brought back to Ohio until May 31, 1996, more than ninety days later, his right to a speedy trial was violated and he was entitled to discharge. This argument is a complete misreading of the statutes. R.C. 2963.13 and 2963.15 refer to the situation where a fugitive is arrested in Ohio and held for extradition to another state. See *State v. Haynes* (1982), 8 Ohio App.3d 119, 8 OBR 174, 456 N.E.2d 1279; Hirsch was incarcerated on a fugitive warrant in Florida, and Ohio would have had no jurisdiction or control over the events in that state. See *State ex rel. Gilpin v. Stokes* (1984), 19 Ohio App.3d 99, 19 OBR 186, 483 N.E.2d 179; *State v. Moore* (C.P.1968), 14 Ohio Misc. 139, 43 O.O.2d 349, 237 N.E.2d 628, certiorari denied (1968), 393 U.S. 221, 89 S.Ct. 460, 21 L.Ed.2d 393. Further, Ohio's speedy-trial statutes do not apply to extradition proceedings. *Haynes, supra,* 8 Ohio App.3d at 120–121, 8 OBR at 175–177, 456 N.E.2d at 1281–1282. Consequently, we find no merit in this argument and we overrule Hirsch's tenth assignment of error.

## VI. MANIFEST WEIGHT

 In his twelfth assignment of error, Hirsch states that the verdict is against the manifest weight of the evidence. After reviewing the record, we cannot conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. *State v. Allen* (1990), 69 Ohio App.3d 366, 374, 590 N.E.2d 1272, 1278; *State v. Ashbrook* (Apr. 30, 1997), Hamilton App. No. C–960535, unreported, 1997 WL 208148. The state presented substantial evidence from which the jury could reasonably conclude that all of the elements of aggravated murder were proven beyond a reasonable doubt. Therefore, Hirsch's conviction is not against the manifest weight of the evidence. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. See, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. His main complaint is that the state's witnesses, particularly Cantwell and Cone, were not credible, but matters as to the credibility of witnesses are for the trier of fact to decide. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Accordingly, we overrule Hirsch's twelfth assignment of error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, P.J., and MARIANNA BROWN BETTMAN, J., concur.