{¶ 1} This appeal arises out of a motion to dismiss a felony charge of aggravated robbery due to an alleged violation of Appellant Anthony Anderson's speedy trial rights. Appellant argues that the almost thirteen-month time period between his indictment and his arrest violated the right of speedy trial articulated in Doggett v. United States
(1992), 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520. Appellant's address was unknown at the time of his indictment, and he subsequently committed crimes in New York and Pennsylvania before being extradited to Ohio. Any delay in arresting Appellant must be attributed to his own actions, and the decision of the trial court to overrule Appellant's motion to dismiss is affirmed.
 {¶ 2} On September 14, 2000, a clerk at Jim's Service Station in Wellsville, Ohio, was robbed at gunpoint.
 {¶ 3} On October 25, 2000, the Columbiana County Grand Jury indicted Appellant for the crime, charging him with one count of aggravated robbery in violation of R.C. 2911.01(A)(1). The charge included a firearm specification. Appellant's address was unknown at the time of the indictment. (Tr., p. 7.) Appellant fled the State of Ohio after the indictment.
 {¶ 4} From December 14, 2000, until March 14, 2001, Appellant was incarcerated in Schenectady, New York.
 {¶ 5} On August 12, 2001, Appellant was incarcerated in Allegheny County, Pennsylvania.
 {¶ 6} On August 20, 2001, Appellee initiated extradition proceedings to remove Appellant from Pennsylvania to face charges in Ohio. Appellant was returned to Columbiana County on November 13, 2001, and was served with the indictment on that date. He was arraigned on November 28, 2001. The period between his indictment and arraignment was thirteen months and three days.
 {¶ 7} On January 25, 2002, Appellant signed a waiver of speedy trial rights, agreeing to postpone the trial to March 11, 2002. On March 10, 2002, Appellant took an overdose of medication and was unable to attend trial on March 11, 2002. On March 13, 2002, Appellant filed a Motion to Determine Competency.
 {¶ 8} On March 25, 2002, Appellant filed a Motion to Dismiss, arguing that he had been denied his right to a speedy trial.
 {¶ 9} On May 6, 2002, the court held a hearing to determine Appellant's competency to stand trial, to resolve his motion to dismiss, and to accept his plea of no contest to the charge of aggravated robbery. The court's judgment entry, also dated May 6, 2002, overruled Appellant's speedy trial motion, accepted a plea of no contest, and sentenced him to seven years in prison. This appeal challenges the court's decision to overrule the speedy trial motion.
 {¶ 10} Appellant's sole assignment of error asserts:
 {¶ 11} "The Lower Court Erred In Overruling And Denying The Defendant's Motion To Dismiss Based Upon The Fact That His United States And Ohio Constitutional Rights To Speedy Trial Were Violated."
 {¶ 12} Appellant argues that the Sixth Amendment right to a speedy trial applies to the period of time between the filing of an indictment and the arrest of the defendant, citing Doggett, supra, 505 U.S. 647,112 S.Ct. 2686, 120 L.Ed.2d 520. Appellant incorrectly cites Doggett for the proposition that a one-year delay between indictment and arrest is "presumptively prejudicial" and justifies the dismissal of the charges on speedy trial grounds. As will be shown below, "presumptive prejudice" in the speedy trial context does not mean that the charges should be dismissed, but rather, that a minimum threshold has been met to allow the court to review whether a speedy trial violation has occurred. Id. at 652, 112 S.Ct. 2686, 120 L.Ed.2d 520.
 {¶ 13} The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." Section 10, Article I of the Ohio Constitution contains a similar provision. The right to a speedy trial is, "one of the most basic rights preserved by our Constitution."Klopfer v. North Carolina (1967), 386 U.S. 213, 226, 87 S.Ct. 988,18 L.Ed.2d 1. "The speedy-trial safeguard is premised upon the reality that fundamental unfairness is likely in overlong prosecutions." Dickey v.Florida (1970), 398 U.S. 30, 54, 90 S.Ct. 1564, 26 L.Ed.2d 26.
 {¶ 14} The right to a speedy trial is one of the more difficult Constitutional rights to address because it is, by nature, inexact. "Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances."Pollard v. United States (1957), 352 U.S. 354, 361, 77 S.Ct. 481,1 L.Ed.2d 393. Each prosecution requires careful balancing of the desire to avoid undue speed and the need to prevent inordinate delay.
 {¶ 15} Speedy trial challenges are subject to a four-factor test established by the Supreme Court in Barker v. Wingo (1972), 407 U.S. 514,530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) prejudice to the defendant. Id. No single factor is dispositive, and the court must consider each factor and the related facts and circumstances in order to decide whether a constitutional violation has occurred. Id. at 533.
 {¶ 16} Prior to engaging in a full speedy trial review as a matter of constitutional law, a court must first find that the delay between indictment and arrest is "presumptively prejudicial," which merely signifies the minimum length of time that must pass before the court will engage in the full Barker analysis. Doggett, 505 U.S. at 652,112 S.Ct. 2686, 120 L.Ed.2d 520. A one-year delay between indictment and trial is generally considered the minimum amount of time required to trigger a full Barker analysis. Id. at fn. 1; State v. Selvage (1997),80 Ohio St.3d 465, 468, 687 N.E.2d 433; State v. Triplett (1997),78 Ohio St.3d 566, 569, 679 N.E.2d 290.
 {¶ 17} Before calculating any delay in proceeding to trial, the court must subtract the part of the delay attributable to the defendant.State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶¶ 65-66.
 {¶ 18} There is no dispute that Appellant removed himself from the State of Ohio and fled to New York after he was indicted. Appellant does not allege that Appellee could have located him prior to his arrest on separate charges in New York. Appellant alleges that he was incarcerated in New York from December 14, 2000, until March 14, 2001, and that Appellee should have located him in New York at that time and that the state had a duty not only to locate Appellant but immediately cause his return to the State of Ohio. Assuming arguendo that Appellee could have located Appellant in New York, Appellant's argument remains unpersuasive. The eight-week period between October 25, 2000 (when Appellant was indicted in Columbiana County) until December 14, 2000, (when he was arrested in New York) must be attributed to Appellant. The Ohio Supreme Court held, in State v. Bauer (1980), 61 Ohio St.2d 83,399 N.E.2d 555, that, "[i]n a situation where it is alleged that the defendant is the cause for the delay, the court stated that it would carefully examine the facts in the case to prevent a `mockery of justice' by discharging defendants if in fact the delay was occasioned by their acts." Id. at 834. It is well-established that delays in criminal proceedings arising from the defendant's voluntary act of leaving the State of Ohio are attributable to the defendant. Id.; State v. Smith
(2000), 140 Ohio App.3d 81, 89, 746 N.E.2d 678; State v. Gibson (1992),75 Ohio App.3d 388, 391, 599 N.E.2d 438.
 {¶ 19} In addition, when Appellee did locate Appellant he was incarcerated in Pennsylvania. Instead of being able to arrest Appellant at that time, the state was forced to begin extradition proceedings. These proceedings lasted from August 20, 2001, until November 13, 2001, constituting another twelve weeks which must be attributed to Appellant.State v. Hirsch (1998), 129 Ohio App.3d 294, 316, 717 N.E.2d 789.
 {¶ 20} After subtracting those parts of the delay attributable to Appellant, the time period between the indictment and his arrest was less than nine months. This is significantly shorter than the one-year period normally considered to be the minimum time period needed to trigger a full Barker analysis. For this reason alone, Appellant's assignment of error must be overruled.
 {¶ 21} Even if we engage in a full Barker review, Appellant's assignment of error must still be overruled. The first Barker factor is the length of the delay. As already stated, the delay attributable to Appellee was, at most, nine months. Appellant points to no cases in which a nine-month delay was considered to raise a constitutional violation, and certainly to none where it presents a per se constitutional violation. The second Barker factor considers the reasons given for the delay. The main reason given was that Appellant fled first to New York and then to Pennsylvania. Appellant argues that Appellee could have and should have located him in New York, but there is no evidence in the record supporting that assertion and no case or statutory law which requires the prosecution to engage in a full-scale manhunt. At the hearing on the motion to dismiss, Appellant's counsel did not assert or attempt to prove that Appellee had some means of tracking him down inside the New York penal system. (Tr., p. 6.) The third Barker factor is whether the defendant asserted his speedy trial rights in a timely fashion. The parties and trial court agree that Appellant asserted his speedy trial rights at the appropriate time. (Tr., p. 9.) The fourthBarker factor is the prejudice to the defendant due to the delay. Contrary to his assertions, there is no presumptive prejudice in this case, and Appellant has not alleged or tried to prove any other prejudice due to the delay. The Barker factors weigh overwhelmingly in Appellee's favor, and there is no indication of a constitutional speedy trial violation.
 {¶ 22} For the foregoing reasons, we overrule Appellant's sole assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Vukovich and DeGenaro, JJ., concur.