JOURNAL ENTRY and OPINION
Defendant-appellant Howard Joseph Watson appeals from his conviction after a jury trial for murder with an aggravated felony specification.
In his fourteen assignments of error, appellant challenges his conviction on numerous grounds. Appellant asserts his rights to a fair trial and due process of law were compromised by not only the trial court's actions in denying his motion to suppress evidence, admitting certain evidence at trial, instructing the jury, and sentencing him but also by the prosecutor's decision to include the specification in the indictment, improper questions of witnesses at trial, and improper comments during closing argument. Appellant also asserts his conviction is based upon insufficient evidence.
This court has considered all of appellant's assertions in light of the record and finds none has merit. Therefore, appellant's conviction is affirmed.
Appellant's conviction results from an incident that occurred in the early morning hours of September 21, 1995. The testimony adduced at trial established the following sequence of events.
Appellant, who was twenty-nine years old at the time, had been drinking throughout the evening of September 20, 1995 with some friends at "a bar called The Last Call."[1] This establishment was near the home of one of appellant's girlfriends, seventeen-year-old Kelly Thacker. At approximately 10:00 p.m., appellant telephoned Thacker to request she meet him at "1:40 [a.m.], maybe two o'clock." He told her he would park his vehicle on her street, wait for a time, then attempt to telephone her once more if she did not appear.
Appellant thereafter followed this plan. He left "The Last Call" to drive to Thacker's house, located at 15511 Saranac Avenue in Cleveland, Ohio. Appellant was driving a "black [1986] Lincoln Town Car, full size"; he was "in the process" of purchasing this vehicle from a friend, Anthony Velotta.
Upon his arrival, appellant parked his vehicle in a "No Parking zone on the opposite side of the street from Thacker's residence. Appellant thus parked in front of the parking lot that served the patrons of Walland's Saloon and the Pullman Lounge.
At approximately 1:20 a.m., Thomas Majer was awakened by the sound of a loud crash. Majer lived on East 155th Street; his second-floor bedroom window overlooked Saranac Avenue and the Pullman Lounge and Walland's Saloon. Majer arose and went to one of his windows to discover the source of the noise. Majer's brother, Mark, who also had heard the crashing sound, entered the bedroom as well.
The two brothers looked out to see a blue van "backing up" from the parking lot across Saranac Avenue onto the tree lawn. It bumped into a tree, then pulled forward onto Saranac Avenue, where it stopped. The Majer brothers faced the driver's side of the van from their vantage point.
As they watched, a man, later identified as appellant, exited his vehicle parked on Saranac. Appellant ran toward the van; he appeared "upset." When he reached the van driver's door, he shouted into the open window, "Let's go. Let's f***ing go."
Neither of the Majer brothers heard the van driver reply to appellant's challenge, but Thomas observed the van suddenly pull away and turn left onto East 155th Street. Appellant ran back to the Lincoln, entered it, and drove in pursuit of the van. Thomas Majer, believing he had witnessed a traffic accident, reported the incident to emergency services.
Some minutes later, at approximately 1:30 a.m., the residents of the apartment building located at 15505 Kipling Avenue also were awakened by the noise of a crash. A blue van traveling at a high rate of speed had collided with some parked vehicles on the street, sending a few of the vehicles onto the tree lawn. The area residents who went outdoors to investigate observed the driver of the van, later identified as Daniel Montesanto, appeared to be seriously injured. He had facial lacerations, was unconscious, and was bleeding copiously. Emergency medical personnel quickly responded to the scene; they transported Montesanto to a nearby hospital, where he was pronounced dead upon his arrival.
Cuyahoga County Assistant Coroner Dr. Heather Raaf performed an autopsy on Montesanto at approximately 8:30 a.m. that same morning. During the procedure, she noticed Montesanto had suffered extensive contusions and abrasions of his head and face. Moreover, his body bore two "paired stab wounds" located on each side of his lower back. The stab wound on the right side demonstrated the instrument had entered through the victim's ribs to pierce both his diaphragm and his kidney. Dr. Raaf determined these wounds probably were caused by a double-bladed knife. She also determined they were the cause of Montesanto's death. She reported her findings to the Cleveland Police Department; thus, the police investigation of a motor vehicle accident became, instead, the investigation of a homicide.
At approximately 5:30 a.m. on the morning of the incident, police officers still were seeking information about the victim by contacting his roommate, friends, and neighbors. In this way, Montesanto's activities of September 20, 1995 into the early morning hours of that day were chronicled. Montesanto was reported to have been drinking with friends immediately prior to the motor vehicle accident. Soon after the victim's van struck appellant's vehicle, the victim's friends had been involved in an altercation at Walland's Saloon with some of appellant's friends, including Anthony Velotta.
Subsequently, the case was assigned to homicide detectives Jack Bornfield and Michael O'Malley. They soon learned of the collision outside of the tavern between Montesanto's van and an older model black Lincoln Town Car. They also learned of the subsequent altercation indoors. Montesanto's roommate described an incident that might have made appellant angry toward the victim. One of appellant's acquaintances contacted the police to describe an oddly-shaped knife he had seen recently in appellant's possession. Moreover, a few of the witnesses interviewed in connection with Montesanto's death knew the Lincoln Town Car involved in the first accident; the witnesses informed the police officers the owner of the vehicle, Anthony Velotta, lived at 805 East 156th Street.
O'Malley proceeded to that location on September 23, 1995. He observed the vehicle parked in the garage. The vehicle had "extensive damage to [its] rear" and, adhering to some of the dented metal, chips of blue paint that later were determined to be consistent with the paint of the victim's van.
 As O'Malley was speaking to Velotta about the vehicle, appellant appeared on the premises. Appellant produced the keys to the vehicle, volunteered the information that he was in the process of purchasing the vehicle and that "the ignition was tricky and how to start it." After O'Malley placed Velotta and appellant under arrest, appellant explained the reason the Lincoln showed damage was because on September 21, 1995, he had been involved in an accident on Saranac in the area of East 155th Street.
Subsequently, appellant gave the detectives additional oral statements. Early in the evening of September 26, 1995, appellant acknowledged he had been acquainted with the victim after observing his photograph in the police file. Appellant spoke about an earlier homicide he had been arrested for;[2] although he had been charged with murder, the case should have been a negligent homicide, which was why he had been acquitted. When asked if he wanted to explain what had occurred between him and Montesanto on September 21, 1995, appellant stated he would not tell * * * his story or who his witnesses were because it would mess up his defense strategy. Appellant was informed about a knife wound found on the body; his response was, So it would have been a manslaughter? Appellant thereupon offered to enter a guilty plea and to tell what had happened if the detective would tell the judge to get [him] involuntary manslaughter in this case.
After appellant had been chosen by Thomas Majer from a police line-up as the person Majer had seen arguing with the driver of the blue van on September 21, 1995, appellant was indicted on one count of murder, R.C.2903.02. The indictment contained an aggravated felony specification for appellant's 1988 conviction for kidnapping. Appellant entered a plea of not guilty at his arraignment. He also was declared indigent and was assigned counsel to represent him.
Counsel subsequently filed a motion to suppress the statements appellant had given to the police after his arrest. Counsel argued appellant's waiver of his right against self-incrimination had not been either knowing or voluntary and, further, appellant had not been afforded his right to contact an attorney. The trial court held a hearing on appellant's motion, then granted it.
The state thereafter appealed from the trial court's order pursuant to Crim.R. 12(J). In State v. Watson (Mar. 20, 1997), Cuyahoga App. No. 70344, unreported (Watson I), this court reversed the trial court's order, stating that since appellant had made only equivocal statements regarding his desire to consult with an attorney during his interviews with the detectives, his statements to them were admissible. The case thus was remanded for further proceedings.
Appellant's case subsequently proceeded to a lengthy jury trial. The jury found appellant guilty as charged in the indictment; however, appellant successfully appealed from his conviction in State v. Watson (1998), 132 Ohio App.3d 57 (Watson II). This court reviewed the record of the proceedings and determined the trial court improperly had ignored appellant's continual efforts to dismiss his appointed counsel and to conduct his own defense. On this basis, the jury's verdict was reversed and appellant's case remanded for a new trial.
Appellant thereafter represented himself in the proceedings although the trial court newly assigned to the case directed appellant be assisted by two attorneys. Appellant filed numerous motions, both for discovery and to dismiss the charge; appellant argued the state had failed to comply with speedy trial requirements. The trial court, in pertinent part, denied appellant's motions.
Appellant's second jury trial commenced on November 17, 1999. The state presented the testimony of the assistant county coroner, the forensic examiners, the investigating police officers, some of the persons who had witnessed each of the motor vehicle collisions that had occurred the night of the incident, and two fellow inmates to whom appellant had admitted killing Montesanto. Appellant testified in his own defense and presented the testimony of several witnesses, seeking to bolster his defense theory that the police officers had committed acts of intimidation and had lied in their efforts to convict appellant of the crime.
The jury ultimately returned a verdict of guilty as charged in the indictment. The trial court sentenced appellant to a term of incarceration of fifteen years to life.
Appellant has filed a timely appeal of his second conviction. He presents fourteen assignments of error by and through counsel,[3] which will be addressed together as appropriate.
Appellant's first assignment of error states:
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED DEFENDANT'S MOTION TO SUPPRESS.
In spite of this court's previous decision in Watson I, appellant argues the trial court erred in denying his pro se motion to suppress evidence, now contending the detectives lacked probable cause to arrest him. Appellant supports this contention by asserting O'Malley responded to Velotta's address only on the basis of anonymous phone calls.
In considering appellant's argument, this court initially notes appellant's assertion is untrue since the record demonstrates the police officers had interviewed a number of people by the time of their arrival at Velotta's address; thus, their decision to arrest appellant was not based solely on anonymous calls. State v. Holden (1985), 23 Ohio App.3d 5.
Additionally, appellant's argument is untimely. The issue of whether suppression of appellant's statements was appropriate already was considered and determined by this court in Watson I. N. Olmsted v. Eliza Jennings, Inc. (1995), 101 Ohio App.3d 652; cf., State v. Wallace (1997), 121 Ohio App.3d 494.
For the foregoing reasons, appellant's first assignment of error is overruled.
Appellant's second assignment of error states:
 DEFENDANT WAS DENIED A FAIR TRAIL (SIC) WHEN THE PROSECUTION IMPROPERLY INCLUDED AN ALLEGATION OF A PRIOR CONVICTION IN DEFENDANT'S INDICTMENT.
Appellant argues his defense was prejudiced by the state's inclusion of the aggravated felony specification in the body of the indictment against him. Appellant's argument lacks merit for two reasons.
First, the state was justified in its action by virtue of R.C.2929.13(F)(6). That statutory section would limit the trial court's sentencing discretion if appellant had been convicted of a lesser-included offense to the offense of murder.
Second, a review of the record demonstrates that as a part of his defense strategy appellant affirmatively sought the introduction into evidence of proof of his prior conviction. Appellant endeavored to bolster his theory of police misconduct in the instant case with the claim his earlier conviction was improperly obtained by similar means. The rule of invited error thus pre-cludes appellant's argument with respect to this assignment of error. State v. Woodruff (1983),10 Ohio App.3d 326.
Accordingly, appellant's second assignment of error also is overruled.
Appellant's third, fourth, fifth, seventh, eighth and ninth assignments of error state:
 III. DEFENDANT WAS DENIED A FAIR TRIAL WHEN HIS ENTIRE ORAL STATEMENT TO THE POLICE WAS RELATED TO THE JURY.
 IV. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE PROSECUTOR RELIED ON DEFENDANT'S BAD CHARACTER TO OBTAIN A CONVICTION.
 V. DEFENDANT WAS DENIED A FAIR TRIAL WHEN HE WAS IMPROPERLY QUESTIONED CONCERNING A PRIOR CONVICTION.
 VII. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE CHARACTER OF THE DECEDENT, DANIEL MONTESANTO, WAS PRESENTED TO THE JURY.
 VIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN IRRELEVANT EVIDENCE WAS OFFERED.
 IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN STATEMENTS OF WITNESSES WERE READ BY POLICE OFFICERS.
Appellant argues in these assignments of error that the prosecutor engaged in misconduct during his questioning of witnesses and closing argument. Appellant contends the trial court permitted improper evidence to be introduced by these means. Appellant's argument is unpersuasive.
Generally, the conduct of a prosecuting attorney during a trial cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203, cited with approval, State v. Maurer (1984), 15 Ohio St.3d 239. Moreover, it has been held the trial court must afford the prosecutor some latitude and freedom of expression during argument. State v. Apanovich (1987), 33 Ohio St.3d 19; State v. Vrona (1988), 47 Ohio App.3d 145. A defendant shall be entitled to a new trial, therefore, only when a prosecutor either asks improper questions or makes improper remarks and those actions substantially prejudice the defendant. State v. Smith (1984), 14 Ohio St.3d 13; State v. Keenan (1993). 66 Ohio St.3d 402.
Furthermore, a trial court has broad discretion in the admission and exclusion of evidence, and a review court shall not reverse a trial court's judgment for failure to exclude evidence unless the trial court has clearly abused its discretion and the complaining party has suffered material prejudice. Columbus v. Taylor (1988), 39 Ohio St.3d 162, 164. Accordingly, the trial court's judgment on this matter will not be reversed unless the trial court acted unreasonably, arbitrarily or unconscionably. Id. at 165; see, also, Evid.R. 403.
Appellant initially takes issue with the reading of his entire oral statement into evidence. This, however, was not improper for two reasons.
First, in Watson I, this court instructed the trial court that appellant's oral statements were admissible into evidence. Second, the reading of the entire statement was necessary in order both to reveal appellant's failure to deny his involvement in the crime and to place appellant's plea bargain offers into context. This, therefore, did not constitute error. See, e.g., State v. Smith (1996), 115 Ohio App.3d 419
at 424; see, also, State v. Kidder (1987), 32 Ohio St.3d 279 at 285; Evid.R. 801(D)(2)(a).
Appellant next challenges the prosecutor's comments during closing argument that characterized appellant. The prosecutor noted, for example, appellant was a man who's been convicted of several previous crimes and a man some people in the neighborhood refer to as `Crazy Joe.' The prosecutor also noted although appellant had been acquitted of murder in another case, he had admitted that he was responsible for that man's death.
Finally, the prosecutor noted one of appellant's witnesses had indicated the victim was nice but failed to indicate the same for appellant.
Appellant's challenges must be rejected since, in all but the last instance, appellant failed to object to the comments of which he now complains; hence, he has waived any argument on appeal. State v. Gillard (1988), 40 Ohio St.3d 226 at 230; State v. Williams (1977),51 Ohio St.2d 112.
With regard to the prosecutor's aside about which of the two principal persons involved in the incident had been considered nice by appellant's witness, a review of that remark in context of the entire argument demonstrates appellant was not deprived of his right to a fair trial. The prosecutor reminded the jury it was to rely on its own memory of the testimony and further urged the jury to listen to the trial court's instructions on the law. Thus, that simple remark on the evidence did not either substantially or unfairly prejudice appellant.
Appellant additionally asserts he was asked improper questions regarding his prior convictions during cross-examination. Once again, however, appellant has waived his argument for purposes of appeal by failing to object when he had the opportunity to do so. State v. Williams, supra.
Appellant's claim that the prosecutor's questions constituted plain error, moreover, cannot be credited. The situation that occurred in this case is similar to that faced by the court in State v. Greer (1988),39 Ohio St.3d 236. Therein, the supreme court indicated that on cross-examination the prosecutor may inquire into specific acts committed by a defendant in response to the defendant's self-characterization on direct examination. As in Greer, appellant herein opened the door by attempting to bolster his credibility before the jury prior to questioning about the crime at issue. Under these circumstances, especially when appellant completely denied he was the perpetrator of the murder, thus directly placing his identity as the perpetrator of the crime at issue, plain error does not exist. See, also, State v. Hirsch (1998), 129 Ohio App.3d 294; cf., State v. Goines (1996),111 Ohio App.3d 840.
Appellant further challenges the prosecutor's remark on the victim's personality; however, in the context of the entire trial, the reference to the victim's character was so brief and relatively innocuous that it cannot constitute grounds for reversal of the jury's verdict. State v. Hirsch, supra at 311.
Next, appellant claims the prosecution committed error in presenting the testimony of the victim's roommate. This claim is specious since the testimony clearly was offered pursuant to Evid.R. 404(B) to prove appellant's motive for committing the crime. State v. Vinson (1990),70 Ohio App.3d 391.
Finally, appellant challenges the prosecutor's presentation of rebuttal evidence following the testimony of appellant and his witnesses. A review of the challenged testimony, however, fails to demonstrate it either was improper or denied appellant his right of confrontation. Instead, the rebuttal witnesses were presented in accordance with Evid.R. 613(B) to refute evidence offered by appellant. State v. Braxton (1995),102 Ohio App.3d 28, citing State v. Riggins (1986), 35 Ohio App.3d 1
[discretionary appeal not allowed, State v. Braxton (1995),73 Ohio St.3d 1425]; State v. Valentine (July 17, 1997), Cuyahoga App. No. 71301, unreported.
Since the record reveals neither the prosecutor nor the trial court compromised appellant's rights to a fair trial and to due process of law, appellant's third, fourth, fifth, seventh, eighth and ninth assignments of error are overruled.
Appellant's thirteenth and sixth assignments of error state:
 XIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED OF MURDER.
 VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN IT WAS NOT SHOWN THAT THE CAUSE OF DEATH WAS THE KNIFE WOUNDS WITH REASONABLE MEDICAL CERTAINTY.
In these assignments of error, appellant argues the trial court erred in overruling his motions for acquittal.
Appellant contends the state failed to produce sufficient evidence to establish the element of purpose. Appellant also contends that because the assistant coroner could only surmise the victim died as a result of the stab wounds to his back, the testimony was insufficient to prove a murder occurred. Appellant supports the latter contention with citations to civil negligence actions having no relevance to the applicable standard of analysis. Appellant's argument is meritless.
 The standard for determining whether a motion for acquittal is properly denied is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, as follows:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
 A motion for judgment of acquittal under Crim.R. 29(A) should be granted only where reasonable minds could not fail to find reasonable doubt. State v. Bridgeman, supra; State v. Martin (1985), 19 Ohio St.3d 122, 130, 19 OBR 330, 337, 483 N.E.2d 1157, 1165.
State v. Apanovich (1987), 33 Ohio St.3d 19, 23. See, also, State v. Dennis (1997), 79 Ohio St.3d 421.
 The evidence must be viewed in a light most favorable to the prosecution. State v. Martin (1983), 20 Ohio App.3d 172. Thus, a reviewing court will not reverse a verdict where there is substantial evidence upon which the trier of fact could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169; State v. Jenks (1991), 61 Ohio St.3d 259.
Appellant was convicted of violation of R.C. 2903.02, which prohibits a person from purposely causing the death of another. "Purpose" is defined in R.C. 2901.22(A) as the specific intent to cause a certain result. A jury may presume an intent to kill where the natural and probable consequence of a defendant's act is to produce death and the surrounding circumstances support a conclusion the defendant had an intent to kill. State v. Edwards (1985), 26 Ohio App.3d 199.
Viewed in a light most favorable to the prosecution, the state proved appellant purposely caused the death of Daniel Montesanto.
Some weeks prior to the murder, appellant and Montesanto's roommate were involved in a collision. Appellant subsequently attempted to use this incident to take financial advantage of Montesanto's roommate; however, appellant's effort was foiled by Montesanto. In appellant's presence, Montesanto commented to his roommate he should tell [appellant] to go to hell rather than pay an exorbitant amount to compensate appellant for the damage to his vehicle. Appellant was pissed by Montesanto's interference.
One day prior to the incident, appellant displayed to one of Montesanto's neighbors a set of knives he recently had acquired. One of those knives was rather unique, in the sense that it was a single knife with two distinct blades.
On the night of the incident, appellant had parked the Lincoln Town Car he was driving in a No Parking zone on Saranac Avenue just outside the tavern where both appellant and the victim had been drinking with their respective friends. Upon the victim's departure from the establishment, his van collided with the rear of appellant's vehicle. Appellant, who was seated in the vehicle at the time, emerged, approached the victim's van, and angrily urged him to fight. Instead, the victim sped away. Appellant immediately returned to his vehicle and pursued the victim.
Appellant later boasted to two different cellmates what occurred thereafter: He eventually forced the victim to stop the van, whereupon he did the [victim] in by stabbing him two times on the right side and the left side of the back with a knife [that] was sharp on both edges. Although the quantity of blood on the victim's clothing demonstrated the victim re-entered his van after the stabbing, he soon lost control of the van on Kipling Avenue.
In the ensuing collision of his van with a number of parked vehicles, the victim sustained further injuries. Assistant Coroner Raaf testified, however, the cause of Montesanto's death was the two sets of paired stab wounds on the back of the victim's trunk, with perforations of the diaphragm and right kidney. The autopsy report supports her conclusion.
From the foregoing, a reasonable factfinder could have found that appellant purposely stabbed the victim, thus causing his death. State v. Musgrave (Apr. 24, 2000), Knox App. No. 98CA10, unreported. The trial court, therefore, did not err in overruling appellant's motions for acquittal. State v. Holly (July 8, 1999), Cuyahoga App. No. 74452, unreported; State v. Drake (Oct. 28, 1993), Cuyahoga App. Nos. 63964, 63965, unreported.
Accordingly, appellant's thirteenth and sixth assignments of error also are overruled.
Appellant's twelfth assignment of error states:
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN NO INSTRUCTION WAS GIVEN CONCERNING USE OF PRIOR CONVICTIONS.
Appellant argues the trial court was obligated to explain to the jury the proper use in its deliberations of evidence that a witness had prior convictions. A review of the record, however, demonstrates appellant never brought this matter to the trial court's attention when he had the opportunity to do so. Therefore, he has waived this assignment of error. State v. Williams, supra.
Appellant's tenth and eleventh assignments of error state:
 X. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT IMPROPERLY INSTRUCTED ON VOLUNTARY MANSLAUGHTER.
 XI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE INDICTMENT CHARGING MURDER WAS AMENDED.
In these assignments of error, appellant argues certain jury instructions given during his trial were incorrect statements of the law. In considering appellant's contentions, this court is mindful that in reviewing jury instructions, each must be viewed in the context of the overall charge rather than judged in artificial isolation. State v. Price (1979), 60 Ohio St.2d 136.
Appellant contends the trial court's instruction regarding the lesser-included offense of voluntary manslaughter failed to properly allocate the burden of proof. He asserts this failure amounted to a constructive amendment of the indictment.
A review of the challenged instruction does reveal the trial court improperly indicated the state, rather than appellant, had the burden to prove the existence of mitigating circumstances. However, the trial court's incorrect statement of law on this point does not negate the jury's verdict.
 The trial court's instruction misstated the law applicable in this case regarding the party who had the burden of proving that defendant acted under the influence of sudden passion or in a sudden fit of rage in order to find defendant guilty of voluntary manslaughter.
 When a defendant is being tried for murder, it would be illogical to expect the state to attempt to prove that defendant acted under the influence of sudden passion or in a sudden fit of rage; instead, the state can be expected to try to disprove any such mitigating circumstances in order to prove the crime of murder. See State v. Muscatello (1978), 55 Ohio St.2d 201, 203-204, 9 O.O.3d 148, 149-150, 378 N.E.2d 738, 739-740, modified by State v. Rhodes (1992), 63 Ohio St.3d 613, 590 N.E.2d 261. The Ohio Supreme Court recently held:
 A defendant on trial for murder * * * bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder * * *. State v. Rhodes (1992), 63 Ohio St.3d 613, 590 N.E.2d 261, syllabus.
* * *
 The jury in this case [however] convicted defendant of murder. Pursuant to the trial court's instructions, the jury was not to consider whether defendant was guilty of voluntary manslaughter unless it was unable to reach a verdict on the murder charge.
State v. Cuttiford (1994), 93 Ohio App.3d 546, 560-561. (Emphasis added.)
The identical situation analyzed by the court in Cuttiford exists in this case. Since, pursuant to the trial court's correct instruction of law, the jury convicted appellant of murder, it follows the jury never proceeded to consider the elements of voluntary manslaughter. Therefore, the trial court's incorrect statement of law could not have influenced its verdict. Under these circumstances, the trial court's action did not compromise appellant's right to due process of law. See, e.g., State v. Jackson (Apr. 20, 2000), Cuyahoga App. No. 76141, unreported.
Accordingly, appellant's tenth and eleventh assignments of error also are overruled.
Appellant's fourteenth assignment of error states:
 DEFENDANT WAS PLACED TWICE IN JEOPARDY WHEN HE WAS SENTENCED BY STATE AUTHORITIES FOR THE SAME OFFENSE WHICH FORMS THE BASIS OF THIS PROSECUTION.
Appellant asserts double jeopardy principles are violated when parole is revoked upon a defendant's conviction for a subsequent offense. This assertion patently is absurd since appellant was not being punished twice for committing the same offense; rather, his sentence in another case simply was reinstated. This is authorized by statute and in accord with constitutional guarantees. R.C. 2967.15; Barnett v. Ohio Adult Parole Auth. (1998), 81 Ohio St.3d 385; State ex rel. Stamper v. Ohio Adult Parole Auth. (1991), 62 Ohio St.3d 85.
Hence, appellant's fourteenth assignment of error also is overruled.
Appellant's conviction and sentence are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________ KENNETH A. ROCCO, J.:
[1] Quotes indicate testimony given by a witness at appellant's second trial.
[2] It can be gleaned from the transcript of appellant's trial the victim in that case had been appellant's brother-in-law.
[3] Although this court has permitted appellant to file an appellate brief pro se, he has failed to do so; hence, this court will not consider appellant's arguments as presented in his numerous motions filed during the pendency of this appeal. See, e.g., State v. Watson (1998),126 Ohio App.3d 316 at 321.