DECISION.
{¶ 1} In December 2000, defendant-appellant Ralph Carusone's girlfriend, Christina Jeffers, lived with Tammy Hall. Hall was the girlfriend of Mark Walker. Carusone and Walker were not on friendly terms.
 {¶ 2} On December 27, 2000, Walker and his father, Gerald Hacker, were drinking most of the day. They decided to visit Hall at the residence she shared with Jeffers. Hall was home when the men arrived, but Jeffers was at work. Hacker began to taunt Jeffers's dog with a knife. During a telephone call with Hall, Jeffers heard her dog barking. Hall told Jeffers that Hacker was roughhousing with the dog and teasing it with a knife. Jeffers, upset about the situation with her dog, telephoned Carusone and told him to get a gun and meet her at her residence.
 {¶ 3} Carusone took two handguns from his home, loaded them and shoved them into his waistband. He then asked his friend, William St. Clair, to drive him to Jeffers's home.
 {¶ 4} When Carusone arrived at Jeffers's home, he waited outside. St. Clair stayed in the car, but Carusone exited from the vehicle. Hacker came outside and had a conversation with Carusone. Hacker then whistled to summon Walker. Walker came outside, ripped off his coat and shirt, and charged at Carusone. Walker threw a punch at Carusone. Carusone took a gun out of his waistband. Walker punched Carusone in the face and taunted him about using the gun. According to Carusone, as he attempted to block another punch from Walker, the gun discharged, and the bullet struck Hacker, who was standing behind Walker. The state presented evidence that when Carusone extended his arm in Walker's direction, Walker punched Carusone in the face, whereupon Carusone stumbled backward and fired, hitting Hacker. Carusone jumped into the car driven by St. Clair and fled from the scene. Walker removed a knife from Hacker's hand and threw it onto the roof of the women's residence. Hacker died at the scene from a gunshot wound to his chest.
 {¶ 5} After fleeing from the scene, Carusone hid the guns in a wooded area. The next day he turned himself in to police. Subsequently, police recovered the guns.
 {¶ 6} Carusone, who was seventeen years old, was charged with the murder of Hacker. The juvenile court bound him over for trial as an adult. Carusone was indicted for two counts of murder and one count of felonious assault. Count one alleged that Carusone had purposely caused the death of Gerald Hacker, in violation of R.C. 2903.02(A). Count two alleged that Carusone had caused Hacker's death as a result of committing or attempting to commit felonious assault, in violation of R.C. 2903.02(B). Count three charged Carusone with felonious assault against Mark Walker. All three counts contained firearm specifications.
 {¶ 7} Following a jury trial, Carusone was convicted of reckless homicide, in violation of R.C. 2903.041(A), and involuntary manslaughter, in violation of R.C. 2903.04(B). He was also found guilty of the firearm specifications. He was acquitted of both murder charges and of felonious assault. Carusone was sentenced to three years' incarceration for reckless homicide and four years' incarceration for involuntary manslaughter, to be served concurrently. He was also sentenced to three years' incarceration on each firearm specification. The concurrent sentences on the firearm specifications were made consecutive to the other sentences, for an aggregate sentence of seven years' incarceration.
 {¶ 8} Carusone has appealed, raising seven assignments of error for our review. For purposes of clarity, the assignments of error will be addressed in a different order than they are presented in Carusone's brief. We first address Carusone's second assignment of error, which alleges that the trial court erred in allowing the prosecution to introduce prejudicial "other acts" evidence.
 {¶ 9} Christina Jeffers was called as a defense witness. On cross-examination, the prosecutor began to question Jeffers about a tape-recorded statement that she had given to police. Defense counsel objected on the grounds that he had not been given a copy of the statement in discovery. The trial court ruled that the state was not obligated to provide the statement in discovery. The prosecutor then indicated that he intended to question Jeffers about an incident that she had described in her statement where Carusone had fired a gun at her. The trial court ruled that evidence of the prior shooting incident was irrelevant, and that the probative value of such evidence was substantially outweighed by its prejudicial effect. The court stated, "[The prior shooting incident] is too prejudicial in this case, and it offsets, at this time, any probative value. That could change, though, depending on how the testimony of this witness progresses. But I want you to stay away, at this point, directly from questions with respect to the prior conduct of — any prior conduct of the defendant." (T.p. 646.)
 {¶ 10} During further cross-examination, Jeffers was questioned about the conversation she had with Carusone about bringing a gun to her residence. The prosecutor questioned Jeffers as follows:
 {¶ 11} "Now that wasn't just — you didn't just ask him out of the blue whether he had a weapon, did you?
 {¶ 12} "The first conversation, I did.
 {¶ 13} "But you knew that he had a weapon before that night, didn't you?
 {¶ 14} "I know that his brother keeps his over there because of the kids.
* * *
 {¶ 15} "Have you seen that weapon?
 {¶ 16} "No. I heard about it
 {¶ 17} "You heard?
 {¶ 18} "I heard his brother talk about just purchasing one and registering one." (T.p. 654-655.)
 {¶ 19} The prosecutor then asked Jeffers if she had ever seen Carusone with a gun. The trial court overruled defense counsel's objection to the question. Jeffers answered that she had seen Carusone with a gun in "April or May." The prosecutor asked Jeffers, "And what were the circumstances of that, that you saw a weapon just when you met?" The trial court sustained defense counsel's objection to that question.
 {¶ 20} Jeffers testified that she knew that Carusone previously had a gun, but that he had "gotten rid of it." Jeffers testified that Carusone's brother's gun was the only one that Carusone had access to at the time of Hacker's killing. The prosecutor then asked Jeffers about the gun that Carusone had "gotten rid of." Defense counsel objected to that line of questioning.
 {¶ 21} The prosecutor then showed the trial court the transcript of Jeffers's statement to police. In her statement, Jeffers had said that Carusone "always had a weapon," that he had "shot at" her "a month or two before," and that she had bought bullets for a gun at Wal-Mart. The trial court examined the statement and determined that Jeffers's testimony at trial conflicted with her statement to police, because on the stand she testified that the last time she had seen Carusone with a gun was "April or May," but in her police statement she had stated that Carusone had fired a gun at her "a couple of months ago." "A couple of months" before Jeffers's December statement to police would have put the prior shooting incident in October. In addition, the court stated that Jeffers's statement was inconsistent with her trial testimony in that Jeffers had testified at trial that, on the night Hacker was killed, she had asked Carusone on the phone to meet her at her home with the gun, but she had told police that Carusone had told her to stay at work, and that he would go to her home alone. Based upon these perceived inconsistencies, the trial court permitted the prosecution to impeach Jeffers with her prior statement.
 {¶ 22} Using Jeffers's statement, the prosecutor was able to introduce evidence that Jeffers had told police that Carusone "always had a weapon," and that he had fired a weapon at her. When questioned further by the prosecutor, Jeffers testified that Carusone had fired a "cap gun" at her as a joke while she was sitting outside her place of employment. When Carusone took the stand in his own defense, he was asked about shooting the gun at Jeffers. Carusone testified that he had fired a "blank gun" at Jeffers as a joke. Later, the prosecutor called Tammy Hall in rebuttal to testify about the workplace shooting incident. Hall stated that Carusone had fired a gun, but that she had not seen any bullets. Hall further testified that Carusone had told her that he had fired blanks.
 {¶ 23} Carusone alleges that the trial court erred in admitting improper "other acts" evidence that he "always carried a gun" and that he had previously fired a gun at Jeffers and Hall. He argues that the evidence was introduced solely to show that in shooting Hacker he had acted in conformity with his "bad character." Carusone also argues that the evidence was inadmissible because the danger of unfair prejudice substantially outweighed any probative value the evidence may have had.
 {¶ 24} Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 25} Evid.R. 404(B) states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 26} R.C. 2945.59 provides, "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 27} "Evidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." State v. Woodard,68 Ohio St.3d 70, 1993-Ohio-241, 623 N.E.2d 75. In State v. Smith
(1992), 84 Ohio App.3d 647, 660, 617 N.E.2d 1160, the Second Appellate District, citing 1 Weissenberger, Ohio Evidence (1993), Sections 404.4 and 404.23, stated as follows:
 {¶ 28} "The basic thrust of Evid.R. 404 concerns the propensity rule, which is a basic principle that evidence of a person's character trait is not admissible for the purpose of proving that he acted in conformity with his character on a particular occasion. It prohibits use of propensity to demonstrate actions conforming to the propensity. It creates a forbidden inferential pattern, in which character or a trait of it is used to show propensity and to demonstrate therefrom conforming conduct. The policy of the rule is not based on relevance but upon the danger of prejudice."
 {¶ 29} R.C. 2945.59 and Evid.R. 404(B) are to be strictly construed against admissibility. See State v. DeMarco (1987),31 Ohio St.3d 191, 509 N.E.2d 1256; State v. Griffin (2001),142 Ohio App.3d 65, 753 N.E.2d 467; State v. Brown (Oct. 25, 1995), 1st Dist. No. C-940771. "Other acts" evidence is not admissible for the sole purpose of proving that the defendant committed the charged crime. SeeState v. Thompson (1981), 66 Ohio St.2d 496, 422 N.E.2d 855; State v.Smith, supra. "Other acts" evidence may be admitted only if (1) substantial proof is adduced to show that the person against whom the evidence is offered committed the other act; (2) one of the matters enumerated in the rule or the statute is a material issue at trial; and (3) the evidence tends to prove the material enumerated matter. See Statev. Curry (1975), 43 Ohio St.2d 66, 330 N.E.2d 720, syllabus; State v.Brown, supra. "Other acts" evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. SeeState v. Thompson, supra; State v. Hirsch (1998), 129 Ohio App.3d 294,717 N.E.2d 789. The admission or exclusion of relevant evidence will not be reversed absent an abuse of the trial court's discretion resulting in material prejudice to the defendant. See id.
 {¶ 30} There was no dispute that Jeffers had called Carusone on the night Hacker was killed and asked him to bring a gun to her residence. Carusone admitted that he brought two loaded firearms to the scene. There is also no dispute that Carusone shot Hacker during an altercation involving Carusone, Hacker and Walker. None of the matters set forth in Evid.R. 404(B) was at issue in this case. All of the evidence about the prior incident where Carusone fired a gun or a blank gun or a cap gun at Jeffers and Hall was irrelevant to any disputed issue. It is clear from the record that the "other acts" evidence was introduced solely for the purpose of portraying Carusone as a violent individual who regularly carried guns and fired them at others, and to show that he acted in conformity with his violent character on the night Hacker was shot.
 {¶ 31} The prosecutor argues that the evidence was admissible to show the absence of accident, because Carusone testified that the gun went off accidentally as he struggled with Walker. We fail to see how the fact that Carusone had previously fired a weapon negated his claim that the gun discharged accidentally during the struggle.
 {¶ 32} The "other acts" evidence was inadmissible under Evid.R. 404(B), and its admission constituted prejudicial error. See State v.Thompson, supra; State v. Burson (1974), 38 Ohio St.2d 157, 311 N.E.2d 526. The trial court abused its discretion in admitting the evidence. See id.; State v. Hirsch, supra. The second assignment of error is sustained.
 {¶ 33} Carusone's first assignment of error alleges that the trial court erred in allowing extrinsic evidence of Jeffers's statement to police and in allowing the entire statement to be played for the jury.
 {¶ 34} The trial court initially ruled that evidence of the prior incident where Carusone had fired a gun at Jeffers and Hall was irrelevant, and that any probative value of the "other acts" evidence was substantially outweighed by its prejudicial effect. The court then allowed the prosecutor to introduce the same evidence through Evid.R. 613(B) during Jeffers's cross-examination.
 {¶ 35} Evid.R. 613(B) permits the impeachment of an adverse witness with the witness's prior inconsistent statement regardless of its admissibility as substantive evidence. See State v. Davenport (July 30, 1999), 1st Dist. No. C-980516. Contradictory statements by a witness call into question the witness's truthfulness, regardless of the truth or falsity of either statement. See id.
 {¶ 36} "Pursuant to Evid.R. 613(B), when extrinsic evidence of a prior inconsistent statement is offered into evidence, a foundation must be established through direct or cross-examination in which (1) the witness is presented with the former statement, (2) the witness is asked whether he made the statement, (3) the witness is given an opportunity to admit, deny, or explain the statement, and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." State v. Mack, 73 Ohio St.3d 502, 1995-Ohio-273,653 N.E.2d 329, quoting State v. Theuring (1988), 46 Ohio App.3d 152,155, 546 N.E.2d 436.
 {¶ 37} When a witness denies making a prior statement, or states that he is unable to recall the prior statement, the prior inconsistent statement may be proved by extrinsic evidence. See State v. Davenport, supra. "Whether to admit a prior inconsistent statement which is collateral to the issue being tried and pertinent to the credibility of a witness is a matter within the trial court's sound discretion." State v.Riggins (1986), 35 Ohio App.3d 1, 3, 519 N.E.2d 397; see State v. Bobo
(1989), 65 Ohio App.3d 685, 694, 585 N.E.2d 429. A prior inconsistent statement, admitted pursuant to Evid.R. 613(B), may be used only for impeachment purposes and not as substantive evidence of a defendant's guilt. See State v. Kitchen (June 27, 1996), 8th Dist. No. 69430; Statev. Raymundo (Aug. 18, 1995), 11th Dist. No. 94-T-5025; State v. McNair
(Sept. 22, 1994), 8th Dist. No. 65161.
 {¶ 38} We hold that the trial court erred in admitting evidence of Jeffers's statement to police, and in allowing the taped statement to be played for the jury. The "other acts" evidence contained in the statement was highly prejudicial and was irrelevant to any issue in dispute at trial. The statement was not redacted so that the impermissible "other acts" evidence was excluded. The trial court did not instruct the jury that the statement was to be used only to assess Jeffers's credibility and not as substantive evidence that Carusone was guilty of the charged crimes. In fact, the prosecutor invited the jury to consider the evidence as proof of Carusone's guilt. Under these circumstances, the trial court abused its discretion in permitting evidence of Jeffers's statement to police and in allowing the statement to be played for the jury. The first assignment of error is sustained.
 {¶ 39} Carusone's third assignment of error alleges that the prosecutor's closing argument was improper.
 {¶ 40} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. See State v. Smith,87 Ohio St.3d 424, 2000-Ohio-450, 721 N.E.2d 93; State v. Lott (1990),51 Ohio St.3d 160, 555 N.E.2d 293. Considerable latitude is generally afforded to the prosecutor in presenting closing arguments. See State v.Mauer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. The prosecutor's closing argument must be reviewed in its entirety to determine if any remarks were prejudicial. See State v. Keenan (1993), 66 Ohio St.3d 402,613 N.E.2d 203. The emphasis is on the fairness of the trial, not on the culpability of the prosecutor. See State v. Smith, supra. Because Carusone did not object to the prosecutor's remarks, he must show that the remarks amounted to plain error. See State v. Jones, 91 Ohio St.3d 335,2001-Ohio-57, 744 N.E.2d 1163.
 {¶ 41} We have reviewed the prosecutor's closing argument in its entirety. The third assignment of error is sustained to the extent that the prosecutor urged the jury to consider the "other acts" evidence contained in Jeffers's statement as substantive proof of Carusone's guilt, and to the extent that the prosecutor used the "other acts" evidence to portray Carusone as a violent, gun-toting individual who had acted in conformity with his bad character on the night Hacker was killed. The assignment is overruled in all other respects.
 {¶ 42} For his sixth assignment of error, Carusone alleges that he was denied the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, Carusone must show that his trial counsel substantially violated an essential duty owed to him and that his defense was prejudiced by the deficiency. See Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373; State v. Norman (1999),137 Ohio App.3d 184, 738 N.E.2d 403. A properly licensed attorney is presumed to have executed his legal duty in an ethical and competent manner. See State v. Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128;Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164; State v.Norman, supra.
 {¶ 43} Following a review of the record, we hold that trial counsel did not violate any of his essential duties. We point out that counsel strongly objected to the admission of the prejudicial "other acts" evidence and diligently attempted to keep the evidence from the jury. The sixth assignment of error is overruled.
 {¶ 44} Carusone's seventh assignment of error alleges that the trial court erred in sentencing him for reckless homicide and involuntary manslaughter. Pursuant to R.C. 2901.21(A), in order to impose criminal liability two findings must be made: (1) that the defendant engaged in conduct prohibited by a criminal statute and (2) that he acted with the degree of culpability prescribed by the statute. See State v. Bayes
(Dec. 29, 2000), 2nd Dist. No. 00CA0032.
 {¶ 45} Carusone was convicted of reckless homicide, in violation of R.C. 2903.041(A), which provides that "[n]o person shall recklessly cause the death of another or the unlawful termination of another's pregnancy." R.C. 2901.22(C) states, "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 46} Carusone was also convicted of involuntary manslaughter, in violation of R.C. 2903.04(B), which states, "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV [45] of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV [45] of the Revised Code that is a minor misdemeanor."
 {¶ 47} The culpable mental state for involuntary manslaughter is supplied by the underlying offense. See State v. Pickett, 1st Dist. No. C-000424, 2001-Ohio-4022; State v. Jones (Sept. 27, 1995), 1st Dist. No. C-940691; State v. Campbell (1991), 74 Ohio App.3d 352, 358-359,598 N.E.2d 1244. The offense underlying Carusone's involuntary-manslaughter conviction was aggravated menacing, a violation of R.C. 2903.21, which provides, "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or the property of the other person, the other person's unborn, or a member of the other person's immediate family."
 {¶ 48} R.C. 2901.22(B) states, "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 49} To convict Carusone of both involuntary manslaughter and reckless homicide, the evidence must have supported the theory that Carusone had shot Hacker while knowingly putting Walker in fear of serious physical harm, and that Caursone had also shot Hacker while perversely disregarding a known risk. See State v. Jackson, 12th Dist. No. CA2001-10-239, 2002-Ohio-4705.
 {¶ 50} We hold, under the facts of this case, that Carusone could not have been found guilty of both involuntary manslaughter and reckless homicide. Either Carusone shot Hacker while knowingly menacing Walker, or he shot Hacker while recklessly brandishing a firearm during an altercation. The evidence did not reasonably support findings that Carusone acted both knowingly and recklessly. See State v. Tolbert (July 27, 1994), 1st Dist. No. C-930129.
 {¶ 51} In addition, we hold that the evidence did not support a finding that Walker was in fear of serious physical harm. Walker charged Carusone, punched him in the face and taunted him about using the gun. Walker testified that he thought he had "knocked [Carusone] out" because he "wasn't moving." Walker stated that he went over to Carusone and tried to take the gun away, and that, at that point, Carusone raised his arm and fired. We hold that the evidence did not support Carusone's conviction for involuntary manslaughter with aggravated menacing as the underlying offense.
 {¶ 52} The seventh assignment of error is sustained because, under the facts of this case, Carusone could not have acted with the degree of culpability required for both involuntary manslaughter and reckless homicide, and because the evidence did not support Carusone's conviction for involuntary manslaughter.
 {¶ 53} The fourth and fifth assignments of error allege that the trial court erred in overruling Carusone's Crim.R. 29 motion for acquittal and that his convictions were against the manifest weight of the evidence. Pursuant to our disposition of Carusone's seventh assignment of error, the fourth and fifth assignments of error are sustained to the extent that they relate to his conviction for involuntary manslaughter. To the extent that the assignments challenge Carusone's conviction for reckless homicide, they are overruled. The evidence was such that reasonable minds could have reached different conclusions as to whether the state had proved each element of reckless homicide beyond a reasonable doubt. See State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184. Further, we hold that the jury did not lose its way and create a manifest miscarriage of justice requiring reversal of Carusone's conviction for reckless homicide. See State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; State v.Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
 {¶ 54} Because the record does not support Carusone's conviction for involuntary manslaughter, his conviction is reversed and he is hereby discharged on that count. Carusone's conviction for reckless homicide is reversed because the trial court erred in admitting the "other acts" evidence, in admitting the evidence of Jeffers's prior statement and in allowing the tape of the statement to be played for the jury, and because the prosecutor's closing argument was improper. This cause is remanded for a new trial and for further proceedings consistent with law and this Decision.
Judgment accordingly.
Painter, P.J., and Hildebrandt, J., concur.